For the foregoing reasons, I therefore respectfully dissent.

**JOHN'S INSULATION, INC., Etc.,**
**Plaintiff, Appellant,**

v.

**L. ADDISON AND ASSOCIATES, INC.,**
**et al., Defendants—Appellees.**

**No. 97–2286.**

United States Court of Appeals,
First Circuit.

Heard April 6, 1998.

Decided Sept. 11, 1998.

Barry J. Byrnes for appellant.

Paul M. Rezendes, with whom Nelson P. Lovins, Sarah T. Paine and Lovins & Metcalf were on brief for appellees.

Before TORRUELLA, Chief Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

TORRUELLA, Chief Judge.

Plaintiff-appellant John's Insulation, Inc., appeals from the dismissal of its complaint against defendant-appellee L. Addison and Associates, Inc., and from the default judgment entered on Addison's counterclaims against John's Insulation. John's Insulation also appeals from several interlocutory orders. Although the appeal from the interlocutory orders presents some worrisome questions, we are constrained to affirm the judgment.

## I. *Background*

John's Insulation, Inc., an asbestos removal specialist, was retained as a subcontractor by L. Addison and Associates, Inc., a plumbing contractor, to assist in the performance of certain fire and safety work at a Veteran's Affairs Hospital located in Jamaica Plains, Boston. In April 1991, after experiencing delays and other construction problems, John's Insulation filed a complaint in the U.S. District Court for the District of Massachusetts against Addison and the Hartford Casualty & Insurance Company (the underwriter of the payment and performance bonds), alleging a claim against Hartford under the Miller Act, 40 U.S.C. §§ 270a-270d, and breach of contract and *quantum meruit* claims under Massachusetts law against Addison. Addison, in turn, asserted three counterclaims against John's Insulation based on breach of contract.

Several intervening events complicated the picture. In 1994, John's Insulation filed a Chapter 11 petition for reorganization in the United States Bankruptcy Court for the

Eastern District of New York. All proceedings in the original suit were automatically stayed. Addison, however, filed a notice of claim with the bankruptcy court for damages arising from John's Insulation's alleged contract violations, and moved to modify the stay to permit the district court action to proceed. The bankruptcy court granted the motion to modify the stay, allowing Addison to assert its claims as a set-off to John's Insulation's claims. Any recovery beyond the set-off, however, would remain subject to the stay.

On the twelfth day of trial, September 22, 1995, the district court declared a mistrial because it had determined, as a matter of law, that the plaintiff's chief witness, John's Insulation Secretary and Treasurer John Fenn, lacked any credibility. After the jury exited the courtroom, plaintiff's counsel, Mr. Barry J. Byrnes, asked for the names and addresses of all the jurors. After being advised of Mr. Byrnes' request, the court responded that no jurors could be interviewed without its express permission, and that counsel would be held in contempt if any attempts were made to interview the jurors without such permission. The counselor replied that he would research the law on that issue and make a formal application for permission to interview the jurors. The court noted that any such motion would be denied because the practice of the court was not to interview jurors. The court then said: "My next ruling is that your motion to appear before this Court is revoked." Finally, the court also noted that Fenn should not appear as a witness in any future trial in this case.

In a written order memorializing its bench rulings, the district court held "as a matter of law that [Fenn] is absolutely incredible and without sufficient personal knowledge of the events concerning which he testified." The court therefore declared a mistrial, "in order that the plaintiff's cause of action be not prejudiced, ... [and] so that the plaintiff is able to present his evidence before a new jury untainted by the witness Fenn's incredible testimony." *Id.* Furthermore, the district court revoked the authorization it had previously granted to Barry Byrnes, the plaintiff's attorney, to appear *pro hac vice.*

Finally, the district court stayed all further proceedings in the case pending the resolution of John's Insulation's bankruptcy petition. The written order, however, did not indicate whether Fenn had been permanently barred from appearing as a witness in any future proceedings in this case.

John's Insulation appealed these orders. On February 28, 1996, a prior panel of this court dismissed, as a premature appeal from interlocutory orders, the appeal as to all district court orders except the order staying the proceedings until the resolution of the appellant's bankruptcy case. With regard to the stay order, we directed the district court to specify its reasons therefor. On March 26, 1996, the district court responded to our order, stating that it refused to lift the stay. The full text of the body of its answer reads as follows:

> To allow the plaintiff to proceed to trial while in Bankruptcy Court provides it with the tactical advantage over the defendants of being in a "no lose" situation, a status which the plaintiff has used to conduct itself in a most antagonistic and unprofessional manner toward the Court and toward the defendants during the course of these proceedings. Such a manner might well be designed to cover up a case lacking in any merit. In addition, plaintiff itself has moved in the United States Court of Appeals to stay the proceedings in the District Court. It should also be noted that plaintiff's attorney Byrnes' permission to appear in the District Court has been revoked and plaintiff has failed to designate another attorney to represent it. This Court shall not try this case as long as Attorney Byrnes continues to unauthorizedly appear as counsel of record for the plaintiff.

Upon receipt of the district court's answer, we vacated the stay and remanded the case to the district court for further proceedings. In the meantime, John's Insulation filed a motion requesting that the district court transfer the proceedings to the U.S. Bankruptcy Court for the Eastern District of New York, in which its bankruptcy case was pending. On remand, the district court denied the motion to transfer the case, and granted

John's Insulation's local counsel leave to withdraw from representing John's, leaving it without an attorney of record.

In November 1996, Addison moved to return the case to the trial list and for an order requiring plaintiff's counsel to make an appearance, on penalty of the dismissal of John's Insulation's complaint and of entry of default judgment on Addison's counterclaims. Mr. Fenn responded to the motion by means of a letter dated January 3, 1997, in which he stated that John's Insulation had no intention of abandoning its complaint, and that it was still searching for replacement counsel.

In March 1997, approximately one year after the stay had been vacated and the case remanded to the district court, the court held a conference in chambers, during which Mr. Fenn appeared on behalf of John's Insulation to request additional time to obtain new counsel. The court granted John's Insulation until June 3, 1997, to retain replacement counsel, and denied Addison's request to have the case returned to the trial list. Mr. Fenn responded by filing an affidavit in which he requested that, if John's Insulation were unable to hire new counsel, and the court were to dismiss its complaint, the counterclaims be transferred to the bankruptcy court. On May 20, 1997, the court scheduled a status conference on July 7, 1997. On May 30, 1997, Mr. Fenn wrote a letter to the court requesting that the conference be rescheduled because he had previously arranged a business trip for that date and therefore would be unable to attend. He also advised the court that John's Insulation had been unable to retain an attorney due to its financial situation, and requested additional time to hire an attorney who would request a smaller retainer. After the defendants opposed the motion on the basis that a corporation, such as John's Insulation, cannot be represented by a non-lawyer, and that John's had been aware since September 1995 that it was required to obtain new counsel, the district court denied the request.

At the status conference, no one made an appearance on behalf of John's Insulation. Three days later, the defendants moved to dismiss John's Insulation's remaining causes of action and for the entry of default judg-

ment on their counterclaims. The district court granted the motion, advised that it would hold a hearing to assess damages on Addison's counterclaims, and ordered the defendants to submit documentation in support of their claim for damages. The district court did not indicate whether the sanction was imposed under Fed.R.Civ.P. 37, 41(b), or 55(b)(2), or, instead, pursuant to its inherent power to sanction abuses. On September 22, 1997, upon receipt of the documentation, the court directed the entry of default judgment on Addison's counterclaims in the amount of $734,825.87, plus pre-judgment interest at the rate of 5.58%, and costs.

John's Insulation now seeks review of the final orders dismissing the complaint and entering default judgment on Addison's counterclaims, as well as from a number of the district court's interlocutory orders, including the order declaring a mistrial, the order revoking Mr. Byrnes' authorization to appear *pro hac vice* before the court, and the order disqualifying Mr. Fenn from testifying as an expert witness.

## II. *Jurisdiction*

■ The notice of appeal in this case indicates that John's Insulation is appealing from the judgment dated September 22, 1997, "and each and every part thereof." Because the judgment conclusively settled all disputes in this case, it is a final decision appealable as of right. *See Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994) (entry of judgment dismissing complaint with prejudice for failure to prosecute is an appealable final judgment); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993) (entry of judgment by default is an appealable final judgment). Accordingly, we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## III. *Scope of the Appeal*

■ Addison argues that the notice of appeal is insufficient to provide us with jurisdiction over certain parts of the appeal. Relying on Fed. R.App. P. 3(c), which provides that "[a] notice of appeal also must designate the judgment, order, or part thereof appealed from," Addison contends that the absence

of any reference in the notice of appeal to any interlocutory orders deprives us of jurisdiction to hear appeals from those orders.

Admittedly, the requirements of Rule 3(c) "are jurisdictional in nature and their satisfaction is a prerequisite to appellate review." *Smith v. Barry*, 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992); *see also Kotler v. American Tobacco Co.*, 981 F.2d 7, 10–11 (1st Cir.1992) (citing *Smith*). On the other hand, as a general matter, "[c]ourts will liberally construe the requirements of Rule 3." *Smith*, 502 U.S. at 248, 112 S.Ct. 678; *see also Kotler*, 981 F.2d at 11. Consequently, "noncompliance with 'mere technicalities' will not defeat appellate jurisdiction .... so long as the litigant's filing 'is the functional equivalent of what the rule requires.' " *Kotler*, 981 F.2d at 11. Furthermore, "we do not examine the notice in a vacuum but in the context of the record as a whole." *Kotler*, 981 F.2d at 11.

Addison contends that, even taking the record as a whole into consideration, the notice of appeal was insufficient to give notice that John's Insulation sought review of the interlocutory orders. Since the purpose of Rule 3(c) is "to ensure that the filing provides sufficient notice to other parties and the courts," *Smith*, 502 U.S. at 248, 112 S.Ct. 678, Addison asserts that John's Insulation's failure to designate the interlocutory orders is more than "noncompliance with [a] mere technicalit[y]," *id.*

Addison's argument is ultimately successful, but not for the reason it puts forward. Contrary to Addison's contention, it has been uniformly held that a notice of appeal that designates the final judgment encompasses not only that judgment, but also all earlier interlocutory orders that merge in the judgment. *See, e.g., Tabron v. Grace*, 6 F.3d 147, 153 n. 2 (3d Cir.1993); *Williams v. General Motors Corp.*, 656 F.2d 120, 125–26 (5th Cir. 1981); *Cattin v. General Motors Corp.*, 955 F.2d 416, 428 (6th Cir.1992); *Glass v. Dachel*, 2 F.3d 733, 738 (7th Cir.1993); *Employee Staffing Servs.* v. *Aubry*, 20 F.3d 1038, 1042 (9th Cir.1994); *Bowdry v. United Airlines, Inc.*, 58 F.3d 1483, 1489 (10th Cir.1995); *see generally* 9 James W. Moore, et al., *Moore's Federal Practice* ¶ 203.17[3] at 3–92 & n. 19 (1996); 16A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 3949.4, at 67 & n. 13 (1996). Were this the end of our analysis, Addison's argument would have to be rejected because all of the prior orders were nonfinal unappealable orders which merged in the final judgment.

However, six circuit courts of appeals have recognized an exception to the rule, holding that interlocutory rulings do not merge into a judgment of dismissal for failure to prosecute, and are therefore unappealable. *See, e.g., Marshall v. Sielaff*, 492 F.2d 917, 919 (3d Cir.1974) (interlocutory rulings did not merge with judgment of dismissal with prejudice for failure to prosecute); *Hughley v. Eaton Corp.*, 572 F.2d 556, 557 (6th Cir.1978) (same); *DuBose v. Minnesota*, 893 F.2d 169, 171 (8th Cir.1990) (same);[1] *Huey v. Teledyne, Inc.*, 608 F.2d 1234, 1239 (9th Cir.1979) (same); *Ash v. Cvetkov*, 739 F.2d 493, 497 (9th Cir.1984) (same, but dismissal without prejudice); *cf. Sere v. Board of Trustees of the Univ. of Illinois*, 852 F.2d 285, 288 (7th Cir.1988) (Rule 37(b) dismissal with prejudice for failure to complete discovery and to attend a deposition); *Bowe v. First of Denver Mortgage Investors*, 613 F.2d 798, 800–801 (10th Cir.1980) (commenting favorably on holding in *Huey* ).

One reason given for this exception is that the general rule "that rulings on interlocutory orders are encompassed within a subsequent final judgment and may be reviewed as part of that judgment ... [should be] inapplicable where adherence would reward a party for dilatory and bad faith tactics." *Sere*, 852 F.2d at 288. Similarly, in a passage often quoted in subsequent decisions, the Third Circuit explained:

> If a litigant could refuse to proceed whenever a trial judge ruled against him, wait for the court to enter a dismissal for fail-

**1.** *But see Drake v. Southwestern Bell Tel. Co.*, 553 F.2d 1185, 1187 (8th Cir.1977) (on appeal from dismissal without prejudice for failure to prosecute, court would review interlocutory orders in the interest of efficient judicial administration where orders effectively deprived plaintiff of meaningful relief).

ure to prosecute, and then obtain review of the judge's interlocutory decision, the policy against piecemeal litigation and review would be severely weakened. This procedural technique would in effect provide a means to avoid the finality rule embodied in 28 U.S.C.A. § 1291. To review the district court's [interlocutory ruling] under the facts of this case is to invite the inundation of appellate dockets with requests for review of interlocutory orders and to undermine the ability of trial judges to achieve the orderly and expeditious disposition of cases.

*Marshall,* 492 F.2d at 919 (quoted in *Sullivan v. Pacific Indemn. Co.,* 566 F.2d 444, 445–46 (3d Cir.1977); *Huey,* 608 F.2d at 1239; *Ash,* 739 F.2d at 497; and *Sere,* 852 F.2d at 288). The other reason for the exception is that "by the dismissal of the suit [for failure to prosecute or comply with a court order], any rulings which preceded that action by the trial court are ... rendered moot." *Hughley,* 572 F.2d at 557.

The Second and Fifth Circuits, however, have rejected the *Marshall* exception. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 178–79 (2d Cir.1990) (order denying motion for class certification held to have merged into final judgment resulting from class representative's failure to prosecute its individual claim); *Allied Air Freight, Inc. v. Pan American World Airways, Inc.,* 393 F.2d 441, 444 (2d Cir.1968) (interlocutory orders in case dismissed without prejudice for failure to prosecute held appealable); *cf. Nichols v. Mobile Bd. of Realtors,* 675 F.2d 671, 675 (5th Cir.1980) (noting that the *Marshall* rule had apparently been rejected *sub silentio* in a previous decision by another panel in the same circuit); *Drake,* 553 F.2d at 1187. The analysis in *Allied Air Freight* relied on a Supreme Court case in which the

intentional use of a dismissal for failure to comply with a court order was condoned as a means of obtaining immediate appellate review of an interlocutory discovery order. *See* 393 F.2d at 444 (citing *United States v. Procter & Gamble Co.,* 356 U.S. 677, 680, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)).[2]

In *Procter & Gamble,* the defendants argued before the Supreme Court that the Government's motion—which requested that if it were to violate the court's order to produce the grand jury transcript, the district court should dismiss the complaint—was equivalent to a motion for voluntary dismissal, which at the time was unappealable. *See* 356 U.S. at 680, 78 S.Ct. 983. The Supreme Court disagreed, holding that the Government's unwavering opposition to the underlying court order prevented the motion from being characterized as one for voluntary dismissal. Moreover, the Court noted that although the Government could have tested the validity of the order by other means, such as by subjecting itself to a civil contempt finding, such means could lead to "unseemly conflict with the District Court." *Id.* The Court thus saw nothing wrong with the Government's decision to request that a final judgment be entered as a means of obtaining immediate appellate review. *Id.* at 681, 78 S.Ct. 983.

In *Allied Air Freight,* the Second Circuit followed *Procter & Gamble* in holding that the plaintiff's appeal from the involuntary dismissal of their complaint permitted the court to review prior interlocutory rulings. *See Allied Air Freight,* 393 F.2d at 444. In a later decision, the Second Circuit also suggested that the factual premise behind the *Marshall* exception may be invalid. *See Gary Plastic Packaging,* 903 F.2d at 179. The court pointed out that even if a plaintiff invites dismissal for failure to prosecute as a way of obtaining immediate review of an

---

**2.** Because *Procter & Gamble* provides the only sustained analysis of the issue before us, we discuss it in some detail. In that case, the U.S. Government sought to enjoin Procter & Gamble and other companies from continuing their alleged violations of the Sherman Act. This civil suit followed a grand jury investigation in which no indictment was returned. The Government was using the grand jury transcript to prepare its civil suit, and the defendants moved for produc-

tion of the transcript. The district court granted the motion. The Government moved the court to amend the order "to provide that, if production were not made, the court would dismiss the complaint," so as to permit immediate appeal. 356 U.S. at 679, 78 S.Ct. 983. The court agreed, and when the Government persisted in its refusal to produce the transcript, the court dismissed the complaint for failure to comply with a court order.

otherwise-interlocutory order, there is little danger that the policy against piecemeal appeals will be undermined on a large scale. Plaintiffs pursuing such an avenue of appeal risk forfeiting their potentially meritorious claims each time, because the appellate court could affirm the dismissal. *See id.* With such a high price to be paid, there is little risk of abuse.

■■■ We choose to follow the majority rule of *Marshall*. First, the analysis in *Procter & Gamble* and *Allied Air Freight* depended in large part on the fact that voluntary dismissals were not appealable at the time. *See* 393 F.2d at 444. It is no longer the rule that voluntary dismissals are unappealable; to the contrary, most circuits hold that voluntary dismissals, and especially those with prejudice, are appealable final orders. *See generally* 15A *Federal Practice and Procedure* § 3914.8, at 614–16 (citing cases); *cf. Soto v. Flores,* 103 F.3d 1056, 1059 n. 1 (1st Cir.1997) (noting without discussion that plaintiff had voluntarily dismissed her complaint in order to have a final judgment from which she could appeal). Consequently, a plaintiff that deems an interlocutory ruling to be so prejudicial as to deserve immediate review now has the alternative of dismissing the complaint voluntarily.

Indeed, currently the proper way to appeal an interlocutory order is to move for a voluntary dismissal with prejudice, instead of delaying the case until the district court is forced to dismiss the case for failure to prosecute. *Gary Plastic Packaging* is likely correct in stating that there seems to be little danger that the policy against piecemeal appeals will be entirely undermined by a rule that permits plaintiffs to seek review of interlocutory orders. Our alternative to the Second Circuit's rule, however, is not to entirely bar review of interlocutory rulings, but instead to provide for review by means of voluntary dismissal. The claim made in *Gary Plastic Packaging* is as true of our alternative as it is of the Second Circuit's rule.

Furthermore, the validity of a dismissal for failure to prosecute is entirely independent of the merits of prior interlocutory decisions. As one court stated:

It ... follows that by the dismissal of the suit, any rulings which preceded that action by the trial court are thus rendered moot.... [O]n the contrary, [we] hold that the sufferance of a dismissal of a cause without prejudice is not to be employed as an avenue for reaching issues which are not subject to interlocutory appeal as of right.

*Hughley,* 572 F.2d at 557 (rejecting both rationale and holding of *Allied Air Freight* ). The purpose of a Rule 41(b) dismissal for failure to prosecute, for example, is to penalize dilatoriness and harassment of defendants. *See Link v. Wabash R.R. Co.,* 370 U.S. 626, 629, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see generally* 9 *Federal Practice and Procedure* § 2370, at 346–47 (2d ed.1995). In affirming a judgment dismissing a complaint for failure to prosecute or to comply with the district court's orders, an appellate court is determining that the plaintiff's lack of diligence in litigation deserved to be sanctioned by having its complaint ejected from the courts, regardless of the merits of the case. Thus, if a complaint was correctly dismissed for failure to prosecute, the fact that earlier interlocutory rulings may have been erroneous is irrelevant. *See Al–Torki v. Kaempen,* 78 F.3d 1381, 1386 (9th Cir. 1996) ("[t]here is no good reason to allow [a] plaintiff to revive his case in the appellate court after letting it die in the trial court").

It is understandable that plaintiffs may sometimes find that an interlocutory ruling has so damaged their case that seeing it to trial would be a waste of resources. However, in such situations, the proper course of action is not to delay the proceedings, but to file a motion for voluntary dismissal with prejudice, stating explicitly that the purpose is to seek immediate review of the interlocutory order in question. Such a voluntary dismissal has the virtues of giving the defendants and the district court notice of the plaintiff's intentions, and of preventing excessive delay. The alternative—to delay and delay until the court loses patience and dismisses the complaint under Rule 41(b)— needlessly wastes the time and resources of all parties involved.[3]

The dismissal and default judgment were imposed as a sanction for John's Insulation's delay and failure to comply with the court's orders. Thus, regardless of the possibility that the district court may have abused its discretion in its interlocutory orders, a review of the merits of those orders is beyond the scope of this appeal.

## IV. *Analysis*

As a preliminary matter, we note that the district court's order of September 22, 1997, does not cite any legal authority in support of its decision to enter judgment dismissing the complaint and enter judgment by default on the counterclaim. The first question we face, therefore, is to determine if there is any source of authority for the district court's action.

■ "A district court has broad authority to ... dismiss a case for failure to obey ... orders," *Robson v. Hallenbeck*, 81 F.3d 1, 2 (1st Cir.1996). One source of such authority is Fed.R.Civ.P. 41(b). On the other hand, "the rules of civil procedure do not completely describe and limit the power of district courts." *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 11 (1st Cir.1985). Indeed, "[i]t has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (citations omitted). Those inherent powers to sanction parties for litigation abuses include the power to "act *sua sponte* to dismiss a suit for failure to prosecute," *id.* at 44, 111 S.Ct. 2123 (citing *Link*, 370 U.S. at 630–31, 82 S.Ct. 1386), and to enter default judgment, *see Brockton Sav. Bank*, 771 F.2d at 12.

The order's lack of citation to the Rules of Civil Procedure makes it difficult to conclude that the court was acting pursuant to its authority under Fed.R.Civ.P. 41(b) to dismiss the complaint for failure to prosecute. Not even Addison's motions requesting such sanctions identified the rules pursuant to which the court could impose them. Because there is no conflict between the authority granted by these rules and the court's inherent powers, however, we may assume that the district court employed its inherent powers in an attempt to vindicate the integrity of the proceedings in this case.

■ We review a district court's exercise of its inherent powers only for abuse of discretion. *See Chambers*, 501 U.S. at 44, 111 S.Ct. 2123; *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). In doing so, we must remain aware that "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League*, 427 U.S. at 643, 96 S.Ct. 2778.

Even if the provisions of the Rules of Civil Procedure that permit the imposition of sanctions for litigation abuses are not strictly applicable here, they may nevertheless be used by analogy to guide our review of the district court's actions. Admittedly, "[i]t is hard to find an area of law in which the governing rules are, and probably have to be, so vague." *Robson*, 81 F.3d at 2. Thus, on the one hand "[c]laims of abuse of discretion under Rule 41(b) typically have not received a sympathetic ear from us," *Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 107 (1st Cir.1995) (citation omitted), be-

---

**3.** It has been suggested that if a district court were to deny a plaintiff's motion for voluntary dismissal, the plaintiff should be permitted the alternative of seeking review of interlocutory orders by intentionally failing to prosecute its case, so long as it is clear that the purpose is precisely to obtain review of the orders. *See generally* 15A *Federal Practice and Procedure* § 3914.8, at 623.

Even if we were to adopt such a view, however, it would be of no avail to John's Insulation in this case, because the argument has not been advanced that it willfully delayed the proceedings in order to have the case dismissed for the purpose of obtaining immediate review of the mistrial and disqualification orders.

cause "case management is a fact-specific matter within the ken of the district court," *Robson*, 81 F.3d at 2–3. On the other hand, we do not rubber-stamp the decisions of the district court, *see Benjamin*, 57 F.3d at 107, because "[d]ismissal with prejudice is a harsh sanction, ... which should be employed only when a plaintiff's misconduct has been extreme, ... and only after the district court has determined that none of the lesser sanctions available to it would truly be appropriate." *Estate of Solis–Rivera v. United States*, 993 F.2d 1, 2 (1st Cir.1993) (citations omitted). In determining whether a plaintiff's misconduct has been extreme, "we engage in an open-ended balancing test," *Benjamin*, 57 F.3d at 108, taking into consideration:

> [whether] there is extremely protracted inaction, disobedience of court orders, ignorance of warnings, contumacious conduct, ... or some other aggravating circumstance such as prejudice to the defendant, glaring weakness in the plaintiff's case, and the wasteful expenditure of a significant amount of the district court's time.

*Estate of Solis–Rivera*, 993 F.2d at 2–3 (citations omitted); *see also Robson*, 81 F.3d at 2 (providing a non-exhaustive list of pertinent considerations). The review of orders entering default judgment is guided by similar factors. *See Affanato v. Merrill Bros.*, 547 F.2d 138, 140 (1st Cir.1977).

After reviewing the record of the proceedings before the district court, we cannot say that the court abused its discretion in ordering, as a sanction for John's Insulation's protracted delay and repeated violation of court orders, the dismissal of the complaint and the entry of default judgment on the counterclaim. First, John's Insulation's failure to retain new counsel delayed the proceedings in this case for more than a year. At the time that the district court dismissed John's Insulation's complaint and entered default judgment on Addison's counterclaims, John's Insulation had been without legal representation for at least 15 months. During that time, this 1991 case remained at a standstill. Addison moved twice for an order returning the case to the trial calendar and

explicitly requiring John's Insulation to obtain new counsel on pain of dismissal and entry of default judgment. *See In re Victor Publishers, Inc.*, 545 F.2d 285, 286 (1st Cir. 1976) (corporations cannot be represented by persons not licensed to practice law). The district court denied both requests for sanctions, but in March 1997, it ordered John's Insulation to obtain new counsel within the following three months.

At the end of the three months, no successor counsel had made an appearance on behalf of John's Insulation. The district court then scheduled a status conference to be held in chambers on July 7, 1997. Mr. Fenn responded on behalf of John's Insulation, writing a letter requesting that the conference be postponed because he was scheduled to be in Chicago on that date. The letter, however, provided no explanation for John's Insulation's inability to retain a new attorney other than to state that it was "due to financial reasons stemming from its bankruptcy. Attorney's [sic] that I have contacted request a sizeable retainer which John's Insulation, at this time, is not in a position to guarantee." The district court denied the motion for continuance, but no one appeared on the appointed date on behalf of John's Insulation. Addison then requested the imposition of sanctions for the third time, and the district court granted the request.

Under the circumstances of this case, the delay alone suffices to support the district court's choice of sanctions. But in addition to the delay, John's Insulation failed to comply with several other court orders. The most significant is John's Insulation's failure to appear at the conference scheduled by the district court even though it was on notice that the district court had specifically rejected its request for a continuance. It is axiomatic that a party may not ignore a district court order with impunity. *See, e.g., Goldman, Antonetti v. Medfit Int'l, Inc.*, 982 F.2d 686, 692 (1st Cir.1993) (dismissal with prejudice for failure to attend pretrial and settlement conference); *Barreto v. Citibank, N.A.*, 907 F.2d 15, 16 (1st Cir.1990) ("discovery orders, other pre-trial orders, and, indeed, all orders governing the management of a case are enforceable under pain of sanction for

unjustifiable violation"). John's Insulation's explanation for its failure to appear at the conference—that Mr. Fenn had a prior business commitment in Chicago—is inadequate. For one thing, Mr. Fenn's unavailability was irrelevant, because the court had made clear that John's Insulation was no longer to be represented by non-lawyers. For another, John's Insulation could have at least sent a representative to appear at the conference, if only to indicate that notwithstanding its failure to comply with the order to obtain counsel, it was still interested in prosecuting the case.

Although dismissal and default judgment are the two most severe sanctions available, we do not deem the district court's decision to impose them in this case to have been an abuse of discretion. "[T]he law is well established in this circuit that where a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal." *Figueroa–Ruiz v. Alegría,* 896 F.2d 645, 649 (1st Cir.1990). The purpose of sanctions, moreover, is not merely to penalize violations of court procedures, but also to deter future violations by other parties, and thus sanctions do not have to be strictly proportional to the severity of a given party's violations. *See National Hockey League,* 427 U.S. at 643, 96 S.Ct. 2778.

Finally, we reject John's Insulation's argument that, the complaint having been dismissed, the district court lost jurisdiction to hear the counterclaim asserted by Addison because the automatic stay renders void all unauthorized post-petition proceedings. *See* 11 U.S.C. § 362(a)(1). The bankruptcy court lifted the automatic stay "to permit the action ..., including, without limitation, the counterclaim[ ] asserted by Addison ... to continue to a final judgment," but that "any affirmative recovery by Addison on the Counterclaim, other than by way of setoff, shall remain subject to the automatic stay and the provisions of the Bankruptcy Code." We read the bankruptcy court order to have lifted the stay for the purpose of obtaining a final judgment on *both* the complaint and the

counterclaim. Of course, because the complaint was dismissed, the amount of the set-off is exactly zero. Consequently, the district court was permitted to determine the amount that Addison was entitled to recover on its counterclaim, but the bankruptcy stay will prevent Addison from collecting on that judgment except as the bankruptcy court may permit.

### V. *Conclusion*

For the reasons explained above, we *affirm* the judgment below dismissing John's Insulation's complaint, as well as the order for the entry of default judgment on Addison's counterclaim.