# United States Court of Appeals
## For the First Circuit

No. 13-1991

HÉCTOR LUIS ROMÁN-OLIVERAS; SONIA MARÍA YAMA-RUIZ; FELICITA
OLIVERAS-LÓPEZ,

Plaintiffs, Appellants,

v.

PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); JAMES VÉLEZ;

JULIO RENTA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before

Thompson, Lipez, and Barron,
Circuit Judges.

Nicolás Nogueras-Cartagena and Nogueras Law & Associates on
brief for appellants.
Margarita Mercado-Echegaray, Solicitor General, and Rosa
Elena Pérez Acosta, Assistant Solicitor General, on brief for
appellees.

August 5, 2015

**BARRON**, **Circuit Judge**.  This appeal arises from a suit that Héctor Luis Román-Oliveras, along with his wife and mother, brought against his former employer, the Puerto Rico Electric Power Authority (PREPA), and two individual supervisors.  The potential obstacle that the plaintiffs must overcome to keep their suit alive arises from the settlement negotiations that took place in the summer of 2012.  Because we agree with the District Court that these talks produced a binding oral settlement agreement that the District Court had jurisdiction to enforce, we agree with the District Court that this suit cannot continue.  We thus affirm the judgment below that dismissed the suit on the basis of that settlement agreement.

## I.

Román worked for PREPA for over twenty years.  In March of 2006, however, he was suspended from his job, and in February of 2007, he was then dismissed.  Román along with his wife and mother responded by filing this suit against PREPA, his supervisor, and the plant superintendent under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 - 12213; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17; 42 U.S.C. § 1983; and several Puerto Rico laws.  The plaintiffs alleged that the defendants had unlawfully targeted Román due to his medical disability and his union activities.

The District Court initially dismissed the complaint in its entirety. But on appeal, this Court partially reversed and reinstated the plaintiffs' ADA claim against PREPA and their claims under Puerto Rico law against all defendants. See Román-Oliveras v. P.R. Elec. Power Auth., 655 F.3d 43, 47 (1st Cir. 2011). On remand, the parties then held settlement negotiations. Those negotiations took place in Judge Aida M. Delgado-Colón's chambers in July of 2012.[1] Judge Delgado-Colón later memorialized an account of the discussions in a minute entry in December of 2012. In that entry, Judge Delgado-Colón recounted that the parties had reached a binding oral settlement agreement during the negotiations, and that all that remained was the submission of a final written settlement agreement. The parties, however, did not ultimately submit a final written agreement.[2]

---

[1] The reply brief raises for the first time the argument that nothing in the record shows that Román's wife or mother joined in settling the lawsuit. We deem this claim waived because of appellants' failure to develop it in the opening brief. See Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 239-240 (1st Cir. 2013) ("We have repeatedly held, 'with a regularity bordering on the monotonous,' that arguments not raised in an opening brief are waived." (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 299 (1st Cir. 2000))).

[2] The defendants, in the months following the July 2012 settlement talks, circulated several draft agreements to the plaintiffs without receiving any response. Counsel for the plaintiffs finally responded in October of 2012 and suggested several changes to the written agreement. The parties informed the District Court of their lack of progress in arriving at a written agreement. The District Court urged the parties to finalize what it viewed as an already completed settlement in December of 2012 and dismissed the defendants' pending summary

In May of 2013, Judge Delgado-Colón recused herself from the case, which was then transferred to Judge Gustavo Gelpí. Soon thereafter, Judge Gelpí ordered the plaintiffs to show cause why he could not enforce the oral settlement agreement that Judge Delgado-Colón had found the parties had reached. The plaintiffs responded to that order by arguing that "an agreement had never been reached." The plaintiffs did not ask, however, for an evidentiary hearing on the existence of such an agreement. The plaintiffs also argued in response to the show cause order that, assuming such a settlement had been reached, the District Court lacked subject-matter jurisdiction to enforce it in light of Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994).

Judge Gelpí rejected the plaintiffs' arguments and dismissed the case with prejudice. He then ordered that PREPA deposit the settlement amount with the District Court. This appeal followed.

---

judgment motion as "[m]oot in light of Settlement" in January of 2013.

The court then ordered the parties to finalize their settlement agreement by April 12, 2013. The plaintiffs, however, declined to sign the instrument circulated by the defendants. The District Court nevertheless found this unsigned instrument "captured the terms and conditions" of the oral settlement agreement.

On appeal, the plaintiffs repeat the same arguments that they made below. The plaintiffs argue first that even if there was a binding settlement agreement, the District Court did not have subject-matter jurisdiction to enforce it. The plaintiffs rely on Kokkonen.

There, the district court dismissed a lawsuit after the parties had executed a settlement agreement. Kokkonen, 511 U.S. at 377. The district court did not mention the underlying settlement agreement in the dismissal order. Id. Nor did the district court state that it was retaining jurisdiction to enforce the agreement. Id. Nevertheless, when one party later sought to have the court enforce the settlement agreement, the district court concluded that it had the inherent authority to provide a remedy to safeguard its earlier order of dismissal. Id.

The Supreme Court rejected that ruling. The Court held that a post-dismissal suit to enforce a settlement agreement is simply a separate breach-of-contract claim. Id. at 379. The Court thus held that federal courts need an independent basis for federal subject-matter jurisdiction to enforce that contract claim. Id. at 381.

The plaintiffs argue from Kokkonen that the District Court lacked subject-matter jurisdiction here. But they are wrong to do so. The District Court indisputably had subject-matter

jurisdiction over the plaintiffs' suit and that suit had not yet been dismissed when the defendants sought to enforce the settlement agreement that they claimed had been reached. Thus, if the District Court correctly concluded that the parties had reached a final, oral settlement agreement, the District Court had subject-matter jurisdiction to enforce it when it purported to do so. Kokkonen does not block a district court from enforcing a settlement agreement before the underlying suit has been dismissed. See Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999) ("If . . . the settlement collapses before the original suit is dismissed, the party who seeks to keep the settlement intact may file a motion for enforcement."); see also Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 4-5 (1st Cir. 2008) (same); Bandera v. City of Quincy, 344 F.3d 47, 51-52 (1st Cir. 2003) (concluding district court erred by failing to hold an evidentiary hearing to enforce an alleged settlement agreement before proceeding to trial).

That brings us to the second of the plaintiffs' arguments on appeal -- that the District Court erred in finding that there was a settlement agreement to enforce. Federal law governs our answer to that question because the underlying cause of action arises under federal law.[3] See Malave, 170 F.3d at 220. And our

_____

[3] The complaint included claims under both federal and Puerto Rico law, but no party disputes the applicability of federal law.

review of the facts that the District Court found about whether the parties did in fact enter into such an agreement is only for clear error.  See Kinan v. Cohen, 268 F.3d 27, 32 (1st Cir. 2001).

The record is clear that Judge Delgado-Colón found that the parties had entered into a final and binding oral settlement agreement as of July 2012.  She clearly recorded that finding in a minute entry before she recused herself from the case.  And because that finding was based on Judge Delgado-Colón's "personal knowledge through . . . a settlement conference," Malave, 170 F.3d at 221, we lend her finding particular weight.  See F.A.C., Inc. v. Cooperativa de Seguros de Vida de Puerto Rico, 449 F.3d 185, 192 (1st Cir. 2006).  Moreover, at the time Judge Delgado-Colón entered the finding, the parties did not object.  Nor did the parties object when Judge Delgado-Colón dismissed a pending summary judgment motion as "[m]oot in light of Settlement."  Thus, the parties' conduct -- after Judge Delgado-Colón found that a binding, oral settlement had been reached -- also reasonably suggested that "the existence of the settlement had . . . been conceded previously by both parties."  Malave, 170 F.3d at 221.

---

Since Puerto Rico law would apparently reach the same result, see Lopez Morales v. Hosp. Hermanos Melendez Inc., 447 F. Supp. 2d 137, 142 (D.P.R. 2006), we will accept the parties' "implicit concession" that federal law applies, Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 857 n.3 (1st Cir. 1987).

Judge Delgado-Colón did recuse herself after determining that a binding, oral settlement had been reached. But we find no basis for concluding that Judge Gelpí, after assuming the case from Judge Delgado-Colón, erred in relying on the well-documented conclusion that Judge Delgado-Colón had already reached. Judge Gelpí, after all, issued a show cause order as to why the purported settlement agreement could not be enforced. But the plaintiffs proffered no evidence in response that might cast doubt on the existing factual record before Judge Gelpí. Nor did the plaintiffs ask Judge Gelpí for an evidentiary hearing to determine whether there actually had been an oral settlement agreement. Instead, the plaintiffs left the determination of whether there was a settlement agreement to Judge Gelpí to make on the basis of the record as it then existed. Though the plaintiffs did contend that there was no settlement agreement for Judge Gelpí to enforce, that bare assertion does not suffice to show Judge Gelpí clearly erred in finding otherwise.

The judgment of the District Court is <u>affirmed</u>.