# United States Court of Appeals
## For the First Circuit

No. 20-1112

THE COMMONWEALTH SCHOOL, INC.,

Plaintiff, Appellee,

v.

COMMONWEALTH ACADEMY HOLDINGS LLC, a/k/a Commonwealth Academy,
ET AL.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

John H. Ray, III, with whom Ray & Counsel, P.C. was on brief,
for appellants.
M. Lawrence Oliverio, with whom Polsinelli P.C. was on brief,
for appellee.

April 14, 2021

**SELYA**, **Circuit Judge**. This multifaceted appeal requires us to resolve, as threshold matters, a pair of jurisdictional issues. The first is an issue concerning our appellate jurisdiction, and the second is an issue concerning the district court's jurisdiction. After concluding that neither of these jurisdictional booby traps derails the appeal, we reach the merits and reverse the district court's order of dismissal, direct enforcement of the contested agreement, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The dispute between the parties dates back several years, and we think it helpful to sketch the relevant facts. The Commonwealth School, Inc. (the School) has operated a Boston-based private school since 1958. It was the plaintiff below and is the appellee in this court. The School's antagonist, defendant-appellant Commonwealth Academy Holdings LLC,[1] operates a relatively new private school (founded in 2011) in Springfield, Massachusetts. The distance between Boston and Springfield is slightly over ninety miles.

---

[1] The School's suit also named other defendants allegedly associated with Commonwealth Academy Holdings LLC, and the latter — in its pleadings — suggested that an unnamed entity, Project 13, Inc., may be the real party in interest. For present purposes, nothing turns on the interrelationships among these players, and we refer to them, collectively, as "the Academy."

The pot began to boil in April of 2016. At that time, the School brought suit under the Lanham Act, see 15 U.S.C. §§ 1114(a), 1125(a), against the Academy. The School alleged that it had trademarked the name "Commonwealth School" and that the Academy's name ("Commonwealth Academy") infringed that trademark. The School's complaint also contained supplemental claims arising under Massachusetts law, based on essentially the same conduct. The School subsequently filed an amended complaint covering much the same ground, see Fed. R. Civ. P. 15(a)(1)(B), and the Academy filed an answer in which it denied liability, raised affirmative defenses, and asserted four counterclaims.

In August of 2016, the two parties seemingly achieved a settlement through court-attached mediation. The settlement was based on an oral agreement reached at a mediation session held on August 3, 2016. The material terms of the agreement are straightforward: the School agreed to pay $25,000 to the Academy in exchange for the Academy changing its name to "Springfield Commonwealth Academy."[2] The mediator reported the oral agreement to the district court the next day. Based on the mediator's report, the district court conditionally dismissed the case on August 8, cautioning that the conditional order of dismissal

---

[2] The agreement also authorized the Academy to use the acronym "SCA." Because this provision sheds no light on the current dispute, we omit any further reference to it.

- 3 -

allowed either party to reopen the case within sixty days if the settlement "is not consummated." Both the School's amended complaint and the Academy's counterclaims were to be dismissed.

The parties failed to memorialize the agreement in writing. Within the sixty-day grace period, the School moved to reopen the case. In response, the Academy moved for enforcement of what it deemed to be a valid settlement agreement. At a hearing before the district court on October 13, 2016, both sides acknowledged that they had agreed to the material terms of the settlement. Shortly thereafter, the district court entered an order in which it found that a settlement had been reached at the August 3 mediation session and that, accordingly, the Academy must change its name and the School must pay it $25,000.

For nearly three years, the district court maintained this posture. Early in the process of supervising the implementation of the settlement agreement, the court directed the School to escrow the agreed $25,000 payment. The School complied, and the Academy took steps to change its name in a variety of publications, social media outlets, and promotional materials. It also changed its website. Nevertheless, the prescribed $25,000 payment was not released from escrow. The School said that, despite the Academy's palliative actions, no payment was due because the Academy was allowing students to use basketball jerseys

that prominently featured the words "Commonwealth Academy" but relegated the word "Springfield" to a smaller font.

After a hearing aimed at resolving the "basketball jersey" contretemps, the district court reversed course: it concluded, in an electronic order entered on September 5, 2019, that the parties had not reached an agreement three years earlier because there had not been a "meeting of the minds." Accordingly, the court refused to enforce the settlement even though the Academy had fulfilled virtually all of its commitments under the agreement and, in addition, had represented that it would alter its basketball jerseys in such a way as the court deemed necessary to satisfy the School's objection. Despite indicating that it was vacating the settlement and the order of dismissal, the district court stated in the same order that either side could reopen the case by filing a notice to that effect within thirty days. The court did not explain why, having vacated the order of dismissal, the case had to be "reopened."[3]

The court's invitation went unrequited. With matters at a standstill and the School displaying no inclination to prosecute

---

[3] The district court described its September 5 order as an order vacating the "Settlement Order of Dismissal" that was entered on August 8, 2016. This characterization is confusing because the court also spoke of the parties' need to take affirmative action in order to "reopen[]" the case. For ease in exposition, we refer throughout to the September 5 order as an order refusing to enforce the settlement.

its claims, the court issued another order on January 7, 2020. The January 7 order notified the parties that the case would be dismissed unless one of them showed cause for reopening within two weeks. When neither party responded to the show cause order, the court dismissed the case with prejudice on January 23, 2020.

This timely appeal followed. In it, the Academy principally asks us to reverse the district court's refusal to enforce the settlement agreement.

## II. ANALYSIS

Before we can reach the essence of the parties' dispute — the question of contract formation — two jurisdictional obstacles must be removed. First, we must determine whether this court has appellate jurisdiction. Second, we must determine whether the district court had jurisdiction to enforce the putative settlement. Only when those jurisdictional obstacles have been cleared away can we turn to the merits of the appeal. We proceed accordingly.

### A. **Appellate Jurisdiction**.

Courts of appeals must confirm the existence of appellate jurisdiction in every case, see Calvary Chapel of Bangor v. Mills, 984 F.3d 21, 26 (1st Cir. 2020), taking care to "monitor their jurisdictional boundaries vigilantly," Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., 362 F.3d 136, 139 (1st Cir. 2004). The threshold question in this appeal is whether we

- 6 -

have jurisdiction to review the district court's September 5 order refusing to enforce the parties' settlement. Although this order was interlocutory in nature, the Academy submits that it is reviewable because it merged with the judgment (that is, with the eventual dismissal with prejudice of the action).

For the most part, our appellate jurisdiction extends only to "final decisions of the district courts." 28 U.S.C. § 1291. Interlocutory orders, virtually by definition, are not "final decisions," and they ordinarily cannot be appealed at the time they are entered. See Awuah v. Coverall N. Am., Inc., 585 F.3d 479, 480 (1st Cir. 2009). Once a district court enters final judgment, though, antecedent interlocutory orders typically merge into the judgment and become subject to appellate review. See John's Insulation, Inc. v. L. Addison and Assocs., 156 F.3d 101, 105 (1st Cir. 1998).

Of course, this general rule, familiarly known as the "merger doctrine," admits of exceptions. Particularly pertinent for present purposes is the exception which provides that interlocutory orders do not merge with a final judgment when that judgment is premised upon the failure to prosecute a case. See id. at 105-07. No fewer than seven circuits (including this circuit) have adopted this exception to the merger doctrine. See id. at 105 (collecting cases). The question, then, reduces to whether the interlocutory order that the Academy seeks to challenge

- 7 -

and the final judgment in this case combine to trigger this exception.[4]

Literally, the exception would seem to apply:  the order that the Academy seeks to challenge is plainly interlocutory, and the final judgment in this case is based on a failure to prosecute. But as we explain below, we believe that the peculiar circumstances of this case give rise to an exception to the exception and, thus, bring the appeal within the encincture of our appellate jurisdiction.

The cases carving out the exception to the merger doctrine for dismissals for want of prosecution all involved plaintiffs who sought to appeal interlocutory orders following such dismissals.  See, e.g., id. at 104; DuBose v. Minnesota, 893 F.2d 169, 170-71 (8th Cir. 1990); Sere v. Bd. of Trs. of Univ. of Ill., 852 F.2d 285, 286-87 (7th Cir. 1988); Marshall v. Sielaff, 492 F.2d 917, 919 (3d Cir. 1974).  The case at hand deviates from this pattern.  The School, as the plaintiff, was the party that would naturally be expected to prosecute the action.  Yet, it is

---

[4] Where the merger doctrine applies, an appellant need not specifically list the challenged interlocutory order (in addition to the final judgment) in its notice of appeal.  See John's Insulation, 156 F.3d at 105; see also Fed. R. App. P. 3(c).  Here, however, the Academy took a belt and suspenders approach, listing both the interlocutory order and the final judgment in its notice of appeal.

- 8 -

the Academy that seeks to appeal the interlocutory order.[5]  And this deviation from the usual pattern makes a dispositive difference:  given this altered posture, the Academy would effectively have no avenue at all for appellate review of the challenged order if that order did not merge with the final judgment.

In explicating our reasoning, we start with our decision in John's Insulation.  There, we catalogued several reasons for the exception to the merger doctrine.  The main reason, we indicated, is to preserve the integrity of the final judgment rule by preventing any potential reward for "dilatory and bad faith tactics."  John's Insulation, 156 F.3d at 105 (quoting Sere, 852 F.2d at 288).  We explained that "[i]f a litigant could refuse to proceed whenever a trial judge ruled against him, wait for the court to enter a dismissal for failure to prosecute, and then obtain review of the judge's interlocutory decision, the policy against piecemeal litigation and review would be severely weakened."  Id. at 105-06 (quoting Marshall, 492 F.2d at 919).

---

[5] To be sure, the Academy asserted counterclaims in its original pleading, and it may technically be regarded as a plaintiff with respect to those counterclaims.  Even so, the Academy has not pursued its counterclaims beyond its initial pleading, and the terms of the settlement agreement relate directly to the Academy's trademark infringement claim.  Consequently, the existence of the counterclaims does not affect our analysis of the merger doctrine.

This rationale, however, is uniquely applicable to plaintiffs. The risk of a defendant playing fast and loose with the final judgment rule in this manner is nonexistent.

This case illustrates the point. Once the district court refused to enforce the settlement, there was no way for the Academy to engineer a final judgment as a means of obtaining review of an interlocutory order. The School, as the plaintiff, held the reins as to whether to prosecute the case that it had brought: only the School could elect to pursue its claims.

We add, moreover, that the specter of piecemeal litigation, which we mentioned in John's Insulation, see id., is absent here. Reversal of the interlocutory order would reinstate the settlement and provide a roadmap to end the litigation, not extend it. Cf. Bethel v. McAllister Bros., 81 F.3d 376, 381 (3d Cir. 1996) (observing "that it is well established that otherwise non-appealable orders may become appealable where circumstances foreclose the possibility of piecemeal litigation"). The exception to the merger doctrine finds a more welcoming home where reversal of an interlocutory order would simply pave the way for further litigation rather than moving towards an end to legal proceedings. That is not the situation here.

There is yet another reason for the exception: the concern that a plaintiff may drag his heels and substantially delay the progress of the litigation in order to secure a dismissal for

want of prosecution that he then can use as a lever for obtaining review of an adverse interlocutory ruling. See John's Insulation, 156 F.3d at 107. This concern is heightened because a plaintiff who wishes immediately to appeal an interlocutory order has recourse to a more efficient process: he can request a voluntary dismissal, see Fed. R. Civ. P. 41(a), making it possible to appeal the earlier order right away. But no such process is available to a defendant. Here, for instance, the Academy had no opportunity to voluntarily dismiss the School's claims in order to seek immediate appellate review of the interlocutory order.

Attempting to dull the force of this reasoning, the School suggests that the Academy had ample opportunity to keep the case alive in the district court. In this regard, it points to the district court's September 5 order providing that either party could "reopen[]" the case by a notice filed within thirty days. The Academy's failure to file such a notice, the School says, evinces a deliberate abandonment of any challenge to that order. This suggestion mixes plums with pomegranates: the question is not whether the Academy could have kept the case alive by filing a notice to reopen but, rather, whether the Academy had any control over the School's decision qua plaintiff not to prosecute the action that it had brought.

- 11 -

That ends this aspect of the matter.  We hold that the exception to the merger doctrine does not apply and, thus, we have jurisdiction to hear and determine this appeal.

### B.  District Court Jurisdiction.

The second jurisdictional hurdle is easier to vault.  It is axiomatic that federal courts are courts of limited jurisdiction.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 64 (1st Cir. 2018).  In many instances, a motion to enforce a settlement, filed after the underlying action has been dismissed, will require some independent showing of federal jurisdiction.  See Kokkonen, 511 U.S. at 381-82.  But everything depends on context, and the district court may retain jurisdiction to enforce a settlement in a dismissed case as long as the order of dismissal either incorporates the settlement agreement or explicitly reserves jurisdiction to enforce the settlement.  See id.; Metro-Goldwyn Mayer, Inc. v. 007 Safety Products, Inc., 183 F.3d 10, 14 (1st Cir. 1999).

In the course of this appeal, neither party questioned the district court's jurisdiction to enter orders regarding the enforcement vel non of the putative settlement.  At oral argument, however, the court itself voiced concern over whether a Kokkonen issue might be lurking in the penumbra of the case.  Having come to the court's attention, the issue must be addressed.  After all,

the court of appeals has an independent obligation to inquire sua sponte into potential defects in the district court's subject-matter jurisdiction. See Caribbean Mgmt. Grp. v. Erikon LLC, 966 F.3d 35, 40 (1st Cir. 2020).

Upon close examination of the record, we are satisfied that the court below had jurisdiction to enter the challenged order (that is, the September 5 order in which it concluded that there had been no "meeting of the minds" and, thus, refused to enforce the settlement agreement). Importantly, the court had — on August 8, 2016 — entered a conditional order of dismissal that, in effect, reserved its jurisdiction over the case for a period of sixty days. This grace period provided a window within which the parties could reduce their oral settlement agreement to a written agreement or, if unsuccessful, seek some further order from the district court. Such a conditional dismissal is precisely the type of "retaining jurisdiction" provision contemplated by the Kokkonen Court. 511 U.S. at 381.

Thereafter, the district court's jurisdiction was fully restored: both the School and the Academy moved, within the sixty-day window, to reopen the case. The Academy's motion also asked for enforcement of the settlement agreement. Enforcement of the settlement was, therefore, within the district court's jurisdictional orbit. See id.; Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999).

- 13 -

## C.  **The Merits**.

This brings us to the merits:  the district court's refusal to enforce the settlement agreement.  In a case like this one, arising under federal law and brought in federal court, federal common law supplies the substantive rules of decision. See Malave, 170 F.3d at 220.  Even so, federal courts are normally "free to borrow from state law," absent any conflict between federal interests and the borrowed state law.  McCarthy v. Azure, 22 F.3d 351, 356 (1st Cir. 1994).

Issues of contract formation, which often involve mixed questions of law and fact, are reviewed on a "sliding scale." Quint v. A.E. Staley Mfg. Co., 246 F.3d 11, 14 (1st Cir. 2001). The district court's handling of legal questions is reviewed de novo and its factual determinations are reviewed for clear error. See id.  Here, the key question — contract formation — is a question of law informed by essentially undisputed facts.[6]  It follows that the district court's order refusing to enforce the settlement

---

[6] To be sure, the parties' joint October 3, 2018 status report to the district court indicates that the School may seek to claim that the Academy's entitlement to the entire $25,000 payment is conditioned upon the Academy's production of receipts evidencing expenditures incurred in complying with its name-change obligations.  While any such claim seems implausible in light of the district court's description of the settlement agreement, we need not resolve it here.  After all, such a claim goes to contract performance, not contract formation, and can be resolved on remand by the district court.

- 14 -

engenders de novo review.  See, e.g., Coffin v. Bowater Inc., 501 F.3d 80, 97 (1st Cir. 2007).

On appeal, the School argues, in effect, that the Academy's use of basketball jerseys that did not comply with the terms of the settlement agreement proves that the parties, years before, never achieved the requisite meeting of the minds.  This revisionist history does not withstand scrutiny.

Federal common law on contract formation requires mutual assent as to all material terms in order for a valid contract to be formed.  See Quint, 246 F.3d at 14-15; Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC, 816 F.3d 1208, 1212 (9th Cir. 2016).  In determining whether there was mutual assent, the parties' post-negotiation conduct may provide persuasive evidence that an agreement was reached at an earlier time.  Cf. TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 136 (1st Cir. 2007) ("[T]here is no surer way to find out what parties meant, than to see what they have done." (internal citation omitted)).

At the August 3 mediation session, both parties agreed to the material terms of the settlement:  the School was to pay a fixed sum of $25,000 in exchange for the Academy changing its name to "Springfield Commonwealth Academy."  The record makes manifest that, from and after the August 3 session, both the School and the Academy behaved as if the settlement agreement was in full flower. A prime example of this behavior took place on October 13, 2016,

- 15 -

when the district court confirmed the existence of the settlement agreement at a hearing related to settlement compliance. Both parties acknowledged that an agreement had been reached during mediation and made pellucid that they were asking the court to "enforce [the] settlement agreement." The School's counsel added that "[t]here's no dispute as to what [the mediator] read into the record . . . that the defendant agreed to change its name to Springfield Commonwealth Academy . . . and [the School] agreed to pay the defendant a certain sum of money . . . ." In light of this representation and the Academy's acquiescence in it, the district court supportably found that the parties had reached an accord.

The court's finding cannot be discounted as idle chatter. The court gave that finding bite on November 3, 2016, ordering the Academy to refrain from using the "Commonwealth Academy" nomenclature in its publications, promotional materials, athletic jerseys, and other public-facing outlets. It also ordered the School to place the $25,000 payment in escrow. The parties complied without objection — a circumstance indicating that they, like the court, believed that a meeting of the minds had taken place. The parties' conduct following the negotiation of an agreement can itself constitute evidence that they considered the agreement valid and binding. See Román-Oliveras v. P.R. Elec. Power Auth. (PREPA), 797 F.3d 83, 87 (1st Cir. 2015) (finding

settlement enforceable where neither party had objected to earlier district court order recognizing parties' agreement); see also Sound Check, Inc. v. Am. Fed'n of Telev. and Radio Artists, 204 F.3d 801, 804 (8th Cir. 2000) ("Performance is evidence that a party intended to enter into a contract."). The parties' conduct speaks volumes here.

There is more. In an October 3, 2018 status report to the district court, the School raised only issues regarding the allegedly nonconforming basketball jerseys; it did not claim, say, that the terms of the settlement agreement were incomplete or unclear. Equally as telling, the School's evident purpose in raising the "basketball jersey" issue was to seek performance of the settlement agreement. Taken in context, we think that this amounts to the School's reaffirmation of the material terms of the settlement agreement that it had entered into more than two years earlier. See Salem Laundry Co. v. New Eng. Teamsters and Trucking Indus. Pension Fund, 829 F.2d 278, 281 (1st Cir. 1987) (concluding that parties' post-negotiation conduct confirmed material terms of settlement agreement). What is more, the School acknowledged — at a hearing held to resolve the "basketball jersey" dispute — that the Academy "complied with the Court's order to change [its] name," which reinforces the conclusion that the material terms of the settlement agreement were in place. See Román-Oliveras, 797 F.3d at 87.

We recognize that — for reasons not apparent from the record — the parties never got around to reducing their agreement to writing. That failure, though, is not a fatal flaw. As a general matter, oral settlement agreements are enforceable as long as the parties have mutually assented to all of their material terms. See Quint, 246 F.3d at 15. So it is here.

Agreeing upon the material terms of a contract, whether oral or in writing, is not a guarantee that interstitial questions will not arise. Such questions, however, generally do not furnish grounds for rescission of a fully formed agreement. See Colfax Envelope Corp. v. Local No. 458-3M, Chicago Graphic Communications International Union, 20 F.3d 750, 752 (7th Cir. 1994) (Posner, J.) (explaining that "[m]ost contract disputes arise because the parties did not foresee and provide for some contingency that has now materialized" but such disputes are treated as matters of interpretation, "not as grounds for rescinding the contract"). Here, the "basketball jersey" question clearly relates to performance, not to contract formation.

We add, moreover, that federal common law incorporates the "common-sense canons of contract interpretation." Bellino v. Schlumberger Techs., Inc., 944 F.2d 26, 29 (1st Cir. 1991) (quoting Burnham v. Guardian Life Ins. Co. of Am., 873 F.2d 486, 489 (1st Cir. 1989)). Those canons validate this approach. One such canon is that parties have formed a binding agreement once they have

assented to all of the material terms.  See Bourque v. FDIC, 42 F.3d 704, 708 (1st Cir. 1994).  Another canon teaches that when a party's conduct indicates its interest in enforcing an agreement, it cannot then evade its own obligations under the agreement.  See AccuSoft Corp. v. Palo, 237 F.3d 31, 55-56 (1st Cir. 2001).  That canon was triggered when the School sought to have the district court prohibit the Academy's use of its allegedly noncompliant basketball jerseys.

In light of these canons, we think it plain that the failure to imagine every possible permutation related to performance does not necessarily negate the formation of a valid settlement agreement.  See generally TLT Constr., 484 F.3d at 135 (explaining that the presence of an ambiguity "will not necessarily preclude the formation of a binding contract" so long as "the parties . . . have progressed beyond the stage of imperfect negotiation" (internal citation omitted)).  The case at hand is a poster child for this proposition.

The parties' differences about what the Academy was required to do with respect to its basketball team's jerseys relate to performance under the settlement agreement's change-of-name provision, not contract formation.  In fact, the "basketball jersey" dispute assumes that a change-of-name agreement had previously been reached.  Coupling the nature of this dispute with the parties' conduct at and after the August 3 mediation session,

the dispute cannot be said to undermine the existence of the settlement agreement.[7]  See Román-Oliveras, 797 F.3d at 87; Salem Laundry Co., 829 F.2d at 281.  Where, as here, a dispute surfaces as to performance under a contractual term, the existence of that dispute does not allow one of the contracting parties to treat a settlement agreement as if it had been written in disappearing ink.  See AccuSoft Corp, 237 F.3d at 55.

On this record, we conclude that both parties assented to all the material terms of a fully formed agreement:  the School was to pay the fixed sum of $25,000 in exchange for the Academy's compliance with the agreed-upon name-change provision.  It follows, as night follows day, that the settlement agreement was valid and enforceable.  We hold, therefore, that the district court erred both in refusing to enforce the settlement agreement and in dismissing the case after effectively declaring the settlement agreement null and void.

**III. CONCLUSION**

We need go no further.  For the reasons elucidated above, we reverse the district court's order of dismissal and remand the

---

[7] It also bears mentioning that even the dispute about the basketball jerseys proved to be a non-issue.  When the School complained to the district court, the Academy represented that it was currently using a jersey that complied with the School's demands and that it was willing to seek the district court's permission for continued use of that design.  This concession appears to have marked a resolution of the dispute over performance, not a repudiation of the settlement agreement.

case for enforcement of the settlement agreement and for further proceedings consistent with this opinion.  Should gap-filling be required, we remind the district court that it possesses a modicum of authority to put meat on the bare bones of the parties' agreement.  <u>See</u> Restatement (Second) of Contracts, § 204 (1981); <u>see</u> <u>also</u> <u>Cofman</u> v. <u>Acton Corp.</u>, 958 F.2d 494, 497 (1st Cir. 1992). Costs shall be taxed in favor of the Academy.

**<u>Reversed and remanded</u>**.