FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## FOR THE FIRST CIRCUIT

---

**BAP NO. MB 23-012**

---

**Bankruptcy Case No. 22-10156-JEB**

---

**HH TECHNOLOGY CORP.,**
Alleged Debtor.

---

**PCC ROKITA S.A.,**
**SHANGHAI MORIMATSU CHEMICAL EQUIPMENT CO., LTD.,**
**and DFT PROPERTIES, LLC,**
Appellants,

**v.**

**HH TECHNOLOGY CORP. and**
**CRAIG R. JALBERT, as Chapter 7 Trustee and Assignee for the**
**Benefit of Creditors of HH Technology Corp.,**
Appellees.

---

**Appeal from the United States Bankruptcy Court**
**for the District of Massachusetts**
**(Hon. Janet E. Bostwick, U.S. Bankruptcy Judge)**

---

**Before**
**Godoy, Harwood, and Cary,**
**United States Bankruptcy Appellate Panel Judges.**

---

**Ilyas J. Rona, Esq., on brief for Appellants.**
**D. Ethan Jeffery, Esq., Christopher M. Condon, Esq., and Francis C. Morrissey, Esq.,**
**on joint brief for Appellees.**

---

**June 17, 2024**

---

**Cary, U.S. Bankruptcy Appellate Panel Judge.**

This appeal presents challenges by three creditors of HH Technology Corp. ("HHT") to the dismissal of the involuntary bankruptcy petition filed against HHT (the "Dismissal Order") and several interlocutory orders that merged into that order. The challenges center on numerosity—the number of creditors of the alleged debtor, which in turn dictates the number of petitioning creditors required to commence the involuntary proceeding below.[1] According to petitioning creditors, PCC Rokita S.A. ("Rokita") and Shanghai Morimatsu Chemical Equipment Co., Ltd. ("Morimatsu"), and would-be petitioning creditor, DFT Properties, LLC ("DFT") (together, the "Appellants"), the bankruptcy court erred by preventing the joinder of DFT, thus leaving too few creditors to commence an involuntary bankruptcy under § 303(b)(1).[2] They argue, alternatively, that the bankruptcy court erred by including too many creditors in the count, rendering impossible the commencement of an involuntary bankruptcy by fewer than three creditors under § 303(b)(2).

For the reasons described below, we **AFFIRM** the Dismissal Order. We also **AFFIRM** the two interlocutory orders properly preserved for appeal—the order setting the deadline for creditors to join the involuntary petition (the "Joinder Deadline Order") and the order denying DFT's joinder motion (the "Order Denying Joinder Motion").

---

[1] See Susan Heath Sharp & Matthew B. Hale, Involuntary Bankruptcy: A Powerful Weapon, But Use Extreme Caution!, 65 Fed. Law., Aug. 2018, at 8-9 (describing "numerosity requirement").

[2] References to "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532. References to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure. References to "Rule" are to the Federal Rules of Civil Procedure.

## BACKGROUND

### I.     Pre-Filing Events

Rokita, a Polish chemical manufacturer, obtained a foreign default judgment in 2010 against HHT, an engineering company with offices in Massachusetts and Texas, for $1,016,500 in compensatory damages and approximately $12 million in lost profits and other damages. Rokita then commenced a civil action in the U.S. District Court for the District of Massachusetts against HHT to enforce the default judgment. In December 2021, the district court partially granted Rokita's motion for judgment on the pleadings, in the approximate amount of $1,016,500. That same month, HHT ceased operations and elected to use an assignment for the benefit of creditors to wind up its business affairs. As part of that process, on December 31, 2021, HHT executed a document entitled "Trust Agreement and Assignment for the Benefit of Creditors," which transferred and assigned its assets to Craig R. Jalbert (the "Assignee") for him to liquidate and distribute to HHT creditors. The Assignee accepted the assignment that day and subsequently notified HHT's creditors of the assignment.

### II.     Post-Filing Events

Rokita, one of the creditors that received notice, did not assent to the assignment. On February 11, 2022, it commenced an involuntary chapter 7 bankruptcy petition against HHT under § 303(b)(2) as the sole petitioning creditor.

#### A.     The Motion to Dismiss

The Assignee responded by filing a motion to dismiss the involuntary petition (the "Motion to Dismiss"), which HHT joined the same day. The Assignee and HHT (sometimes the "Appellees") alleged that HHT had more than 11 creditors and therefore, under § 303(b)(1), the commencement of the involuntary bankruptcy against HHT was ineffectual because at least three petitioning creditors were required. They also asserted that the Assignee complied with

3

Bankruptcy Rule 1003(b) by providing to Rokita a list of HHT's creditors. The Motion to Dismiss also set forth an answer to the involuntary petition, which asserted affirmative defenses, including that there were more than 11 creditors with claims against HHT and the involuntary petition was, therefore, not joined by the requisite number of creditors under § 303(b)(1). In support of the Motion to Dismiss, the Appellees submitted the Assignee's affidavit, which included a list identifying at least 12 unsecured creditors of HHT (the "creditor list").

Rokita countered in its objection to the Motion to Dismiss that at least four of the 12 unsecured creditors identified by the Assignee and HHT on the creditor list might be excludable under § 303(b)(2) and, therefore, one petitioning creditor was sufficient to commence the involuntary petition.

### B.     The Joinder Deadline Order

On April 21, 2022, during a status conference on the Motion to Dismiss, the bankruptcy court issued the Joinder Deadline Order, setting May 23, 2022 as the deadline for creditors to join the involuntary petition. The order warned that the court would not consider any joinder motions filed after that date "absent a showing of good cause." The transcript of the status conference reflects that Rokita did not object to the Joinder Deadline or express any concern regarding the bankruptcy court's authority to set the deadline.

Morimatsu timely joined the involuntary petition, thereby raising the number of petitioning creditors to two. Three days before the expiration of the joinder deadline, Rokita sought to extend it by an additional 30 days, asserting that, to the extent any creditors of HHT wished to join the involuntary petition pursuant to § 303(c) and Bankruptcy Rule 1003(b), they should be given a reasonable opportunity to do so. The court denied the extension request and scheduled an evidentiary hearing on the Motion to Dismiss for July 27, 2022.

### C. The Additional Creditors and their Joinder Deadline

On July 15, 2022, Rokita and Morimatsu filed a motion seeking to preclude the introduction of evidence relating to four creditors whose existence was belatedly disclosed on July 5, 2022 (the "additional creditors").[3] The court ultimately denied that request, reasoning that Rokita and Morimatsu had an opportunity to conduct discovery regarding the additional creditors. The court directed the Appellees, by July 21, 2022, to file an amended creditor list to include the additional creditors and it set August 22, 2022, as the deadline for the additional creditors to join the involuntary petition. None of the additional creditors filed a joinder motion by the August 22, 2022 deadline.

### D. The Order Denying DFT's Joinder Motion

Although it had previously consented to the assignment, DFT filed a motion seeking to join the involuntary petition (the "Joinder Motion") on July 16, 2022—nearly eight weeks after the expiration of the initial, May 23, 2022 joinder deadline. DFT asserted a "statutory right" under § 303(c) to join the involuntary petition before the case was dismissed or relief was ordered. Arguing there was "good cause" to allow its late request to join because it had discovered additional information after the May 23, 2022 joinder deadline, DFT represented that: (1) one week after the assignment, one of HHT's principals formed a Texas entity, which appeared to be operating the same business as HHT with the same employees at a nearby location; (2) there were newly-disclosed foreign creditors of HHT; (3) other creditors of HHT had received over $1.2 million in payments during the 90-day period preceding the assignment; (4) the assignment by HHT to the Assignee was "invalid" because the Assignee failed to obtain

---

[3] The additional creditors included: Chase Bank Mileage Plus and three foreign creditors, Krzysztof Klementowski, Nanjing Huaxing Pressure Vessel Manufacture Co., Ltd., and S-Log Kamil Srebniak sp. Zo.o. It does not appear that the additional creditors were the subject of HHT's preference claims, discussed later.

the necessary creditor assent required by Massachusetts state law; and (5) one of HHT's insurance policies was recently canceled. Based upon this information, DFT alleged that a bankruptcy trustee was necessary to conduct an independent investigation and bankruptcy court supervision was needed to gather HHT's assets and equitably and transparently administer claims.

In his affidavit filed in support of the Joinder Motion, Jeffery W. Wells, DFT's counsel, averred that, when he "received notice of the [involuntary] bankruptcy proceeding and of the creditor joinder deadline, [DFT] believed that its interests would be adequately served by the state law assignment" and elected not to join the involuntary petition. It was not until July 12, 2022, that Mr. Wells contacted counsel for Rokita and Morimatsu, on behalf of DFT, seeking to join the involuntary petition.

On July 18, 2022, the bankruptcy court entered the Order Denying Joinder Motion, ruling that DFT failed "to show good cause to belatedly join the petition." In denying DFT's joinder request, the court reasoned that DFT was represented by counsel, knew the deadline to join was May 23, 2022, and "could have sought additional information before the May 23, 2022[] deadline, or sought an extension at that time" but instead, "made a deliberate decision not to join the petition prior to the deadline."

### E.      The Dismissal Order

The bankruptcy court conducted a two-day evidentiary hearing on the Motion to Dismiss on July 27, 2022 and August 31, 2022.

In post-trial briefing, the Assignee and HHT asserted that at trial they had identified at least 15 creditors holding qualified claims against HHT. Rokita and Morimatsu countered in their post-trial brief that "numerous genuine issues of material fact" precluded counting 10 of

6

the purported creditors for purposes of determining creditor numerosity. Citing In re Blaine Richards & Co., 10 B.R. 424, 428 (Bankr. E.D.N.Y. 1981), they argued that a prima facie showing of a preferential transfer was enough to exclude a creditor under § 303(b)(2), and defenses to avoidance under § 547 need not be considered. Alternatively, they maintained that the burden of proving affirmative defenses to preference claims was on HHT, and HHT had neither pleaded nor proved the existence of any such defenses.

On March 31, 2023, the bankruptcy court entered the Dismissal Order. In its accompanying memorandum of decision, the court concluded that Rokita and Morimatsu failed to satisfy their burden of establishing that HHT had fewer than 12 eligible creditors. In re HH Tech. Corp., 649 B.R. 365, 371-72 (Bankr. D. Mass. 2023). The bankruptcy court further found that HHT had 15 eligible creditors under § 303(b)(2). Id. at 372. Therefore, three qualifying creditors were needed to join in the petition. Since there were only two, the court ruled, the requirements of § 303(b) were not met, warranting dismissal of the involuntary petition.

The bankruptcy court held that the Assignee and HHT met their "burden by providing the initial list of creditors, rejecting the argument . . . that any additional creditors should not be considered," and acknowledging that the Assignee and HHT "added to the list as additional information came to light."[4] Id. Additionally—and significantly for purposes of this appeal— the bankruptcy court held that the burden shifted to Rokita and Morimatsu "to show that creditors were ineligible because they were transferees of voidable transfers, after having taken into account any applicable defenses." Id. at 373. To do this, they "were required to provide evidence that the elements necessary to avoid a transfer under the applicable statute ha[d] been [met]." Id. The bankruptcy court further stated that "in considering whether a transfer is

---

[4] On appeal, the Appellants do not challenge the bankruptcy court's consideration of the additional creditors.

7

avoidable as a preference, the defenses under Section 547 must also be considered." Id. It stressed that Rokita and Morimatsu could not shift that burden back to the Assignee and HHT by requiring them "to plead and prove potential defenses to alleged transfers." Id. After summarizing the relevant evidence, the bankruptcy court ruled that Rokita and Morimatsu failed to satisfy their burden of showing that the five creditors at issue—Comcast, Voizzo VoIP, National Grid, Ambit Energy, and Bank of America—were recipients of voidable preferential transfers after considering such defenses. Id. at 375-77.

Rokita, Morimatsu, and DFT appealed. In their notice of appeal, they stated they were appealing from the Dismissal Order "and all interlocutory orders that merge into" that final order. Additionally, they itemized seven interlocutory orders, including the Joinder Deadline Order and the Order Denying Joinder Motion. In their statement of issues on appeal, the Appellants listed 30 issues.

## SCOPE OF THE APPEAL

Despite the breadth of their notice of appeal and statement of issues, the Appellants failed to brief all the orders they listed and all the issues they identified. Because of these omissions, we are confronted with the threshold task of determining the scope of this appeal.

### I. The Effect of Failure to Brief Orders and Issues

The numerous interlocutory orders listed in the notice of appeal have merged into the Dismissal Order and, as a result, the Appellants were not required to list those orders in their notice of appeal. See Commonwealth Sch., Inc. v. Commonwealth Acad. Holdings LLC, 994 F.3d 77, 82 n.4 (1st Cir. 2021).[5] To the extent the Appellants desired appellate review of any interlocutory orders, however, they were required to brief them. See Tower v. Leslie-Brown,

_____

[5] This principle is highlighted in Fed. R. Bankr. P. 8003(a)(4), which became effective December 1, 2023 (i.e., after the commencement of this appeal).

326 F.3d 290, 299 (1st Cir. 2003) ("[W]e have made it abundantly clear that failure to brief an argument does, in fact, constitute waiver for purposes of appeal."). Yet, in their brief, the Appellants analyze only two of the listed interlocutory orders: the Joinder Deadline Order and the Order Denying Joinder Motion.[6] It follows that they have waived review of the remaining, unbriefed interlocutory orders. See id.

Similarly, although the Appellants listed 30 issues to be presented on appeal in their statement of issues, they identify and discuss only the following three in their appellate brief:

(1) whether "a bankruptcy court [may] preclude a creditor from joining an involuntary petition based on timeliness where the creditor seeks to join months before dismissal, before any trial date on the matter, and before the outermost deadline for other creditors to join, and where § 303(c) states that creditors may join 'before the case is dismissed or relief is ordered'";

(2) whether, "under § 303(b)(2), a debtor [may] rely on § 547(c) affirmative defenses to establish creditor numerosity where the debtor never pleaded the § 547(c) affirmative defenses"; and

(3) whether, in the context of a motion to dismiss an involuntary petition, the alleged debtor bears "the burden of proof for establishing the § 547(c) affirmative defenses to creditor [in]eligibility where the [alleged] debtor is asserting th[e] affirmative defenses to defeat a petitioning creditor's claim that a creditor is ineligible [to be counted toward creditor numerosity] as [a result of] having received a preferential payment . . . ."

Accordingly, the other 27 issues have been waived. See id.

## II.     The Effect of Failure to Raise Issues in the Proceedings Below

The scope of this appeal is further circumscribed. A core issue in this appeal is the bankruptcy court's decision to deny DFT's Joinder Motion. As previously noted, DFT argued below that it had a statutory right under § 303(c) to join the involuntary petition. On appeal, the Appellants now argue, for the first time, this means that DFT's right to join the involuntary petition was "unfettered" and, thus, the bankruptcy court lacked any discretion whatsoever to set

---

[6] For example, the Appellants never specifically addressed the order denying Rokita's extension motion, or attempted to show that the bankruptcy court committed clear error when it found there was no cause to extend the May 23, 2022 joinder deadline, or that it abused its discretion in denying the extension motion.

9

the earlier deadline of May 23, 2022. Not only had DFT failed to previously reference any limitation on the bankruptcy court's authority to set the joinder deadline, but Rokita also never objected to the joinder deadline in the proceedings below or argued that the bankruptcy court lacked authority to set such a deadline under § 303(c). The colloquy at the April 21, 2022 status conference suggests that Rokita, by its silence, even acquiesced in the setting of the May 23, 2022 joinder deadline. Because these issues are raised for the first time in the Appellants' opening brief, we could deem them waived. See Abdallah v. Bain Cap. LLC, 752 F.3d 114, 120-21 (1st Cir. 2014) (arguments raised for the first time on appeal are deemed waived); see also Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.), 486 F.3d 940, 946-47 (6th Cir. 2007) (holding that, by failing to object to the joinder deadline or argue that the bankruptcy court lacked authority to set such a deadline, petitioning creditors waived the issue on appeal but still concluding "the bankruptcy court did not err in establishing the joinder deadline and denying . . . untimely joinder request").[7] Notwithstanding the foregoing, at oral argument, the Appellees stated they were not pressing the waiver issue.

We need not dwell on whether the Appellants' failure to preserve the question of the bankruptcy court's authority to set the joinder deadline resulted in a waiver or forfeiture of that issue. As discussed below, the Appellants' claim that the bankruptcy court erred in setting the joinder deadline fails on plain error review and, therefore, following First Circuit guidance,

---

[7] But see Cipes v. Mikasa, Inc., 439 F.3d 52, 55-56 (1st Cir. 2006) (stating that, "[i]n many instances, procedural defaults work forfeitures rather than waivers" and reviewing unpreserved claim for plain error); United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002) (distinguishing waiver, the "intentional relinquish[ment] or abandon[ment]" of a right, from forfeiture, the "fail[ure] to make a timely assertion of a right," and noting that "waived issue[s] ordinarily cannot be resurrected on appeal, . . . whereas . . . forfeited issue[s] may be reviewed for plain error") (citations and internal quotation marks omitted); Hathaway v. City of Claremont, No. 96-2193, 1997 WL 157753, at *1 (1st Cir. Mar. 27, 1997) (reviewing claim raised for first time on appeal for "plain error indicative of a clear miscarriage of justice") (citation and internal quotation marks omitted).

it is unnecessary to decide the waiver versus forfeiture question.  See United States v. Acevedo-Sueros, 826 F.3d 21, 24 (1st Cir. 2016) ("Where a defendant's claim would fail even if reviewed for plain error, we have often declined to decide whether the defendant's failure to raise the issue below constituted waiver or mere forfeiture.") (citing United States v. Aguasvivas-Castillo, 668 F.3d 7, 13-14 (1st Cir. 2012)).

## POSITIONS OF THE PARTIES

### I.      The Appellants

As noted above, the Appellants' arguments have one of two alternative objectives: (1) either to establish a sufficient number of petitioning creditors, by demonstrating that the bankruptcy court erred in refusing to permit DFT's joinder; or (2) to reduce the number of eligible creditors by challenging the Appellees' § 547(c) defenses to avoidability, thereby creating a pathway via § 303(b)(2) to involuntary bankruptcy.

#### A.      Joinder Arguments

The Appellants argue that, but for the bankruptcy court's errors in setting the joinder deadline and then refusing to permit DFT to join the involuntary petition, there would have been three petitioning creditors (Rokita, Morimatsu, and DFT), enough to sustain the involuntary petition under § 303(b)(1).  Emphasizing that the Joinder Motion was filed months before the trial and the dismissal of the involuntary petition, the Appellants contend that the bankruptcy court incorrectly excluded DFT as a creditor under § 303(c) because the plain language of that statute "creates a statutory right to join an involuntary petition at any time prior to dismissal or grant of relief."  They cite In re Kidwell, 158 B.R. 203, 210 (Bankr. E.D. Cal. 1993), for the proposition that Congress placed "no restrictions on joinder" in that section.  Thus, the Appellants argue, when the bankruptcy court imposed its own earlier deadline of May 23, 2022, it contravened both "the language and purpose of the statute."  Similarly, the Appellants assert

11

that when the bankruptcy court established the later deadline of August 22, 2022 for the additional creditors to join the involuntary petition, it also violated the statute.

### B. Creditor Numerosity Arguments

They also argue that the bankruptcy court erroneously considered affirmative defenses to avoidability that the Appellees never pleaded. They assert that this error prejudiced Rokita and Morimatsu because it resulted in the qualification of five more holders of claims, thereby raising above 11 the number of eligible creditors to be counted towards § 303(b)(2)'s numerosity requirement. Continuing to rely on In re Blaine Richards, the Appellants insist that a prima facie showing of a preferential transfer is enough to exclude a creditor under § 303(b)(2), and that bankruptcy courts need not consider defenses to avoidability under § 547(c) in determining whether to exclude a creditor. Alternatively, they maintain that the bankruptcy court erred by allocating the burden of proof to establish the affirmative defenses to avoidability on Rokita and Morimatsu. Although the Appellants acknowledge that the burden of proof lies with petitioning creditors to establish that a debtor has fewer than 12 eligible holders of claims under § 303(b)(2), they cite In re Williams, 636 B.R. 720, 738 (Bankr. W.D. La. 2021), for the proposition that the burden of proof shifts to the alleged debtor for the affirmative defenses to avoidability of transfers under § 547.

## II. The Appellees

### A. Joinder Arguments

The Appellees urge us to reject the Appellants' argument that § 303(c) vests creditors with an "absolute, unfettered right" to join an involuntary petition at any time before the involuntary petition is dismissed. Citing In re DSC, Ltd., 486 F.3d at 948, they maintain this argument is flawed because it ignores Bankruptcy Rules 1003(b) and 1013(a), as well as bankruptcy courts' inherent authority to set deadlines. They contend that the Sixth Circuit

12

correctly concluded in <u>DSC</u> that § 303(c) "merely sets an absolute outside limit on the time within which certain qualifying creditors may join an involuntary petition . . . [but] does not prohibit a court from setting an earlier deadline, based upon its case management authority . . . ." <u>Id.</u> Additionally, the Appellees emphasize that: (1) DFT had notice of the May 23, 2022 joinder deadline and elected not to join the involuntary petition before its expiration; (2) two months later, DFT changed its mind; and (3) in denying the Joinder Motion, the bankruptcy court considered and rejected DFT's argument that its changed position was based upon good cause.

**B.      Creditor Numerosity Arguments**

The Appellees dispute the Appellants' claim that § 547(c) defenses are irrelevant in determining the number of creditors under § 303(b), especially as that argument is based on a single authority—<u>In re Blaine Richards</u>—which was rejected by <u>Williams v. Roos</u>, No. 6:19-CV-01674, 2021 WL 234498, at *3 (W.D. La. Jan. 22, 2021). The Appellees also challenge the notion that consideration of the § 547(c) defenses required under § 303(b) may be waived by failure to specifically plead them prior to the evidentiary hearing on a contested involuntary petition. First, they assert that the Appellants cite no authority for this proposition. Second, the Appellees highlight that they were not defendants in an adversary proceeding to avoid preferential transfers.

Finally, citing <u>Popular Auto, Inc. v. Reyes-Colon (In re Reyes-Colon)</u>, 922 F.3d 13, 21 (1st Cir. 2019), the Appellees argue that this circuit places the ultimate burden of proof to establish the ineligibility of creditors under § 303(b) squarely on petitioning creditors. Even if <u>Reyes-Colon</u> were not dispositive of the issue, the Appellees further argue, they "presented ample evidence of affirmative defenses to the alleged avoidable transfers," while the Appellants "failed to [even] argue that the burden was not met by the [A]ppellees . . . ."

13

## APPELLATE JURISDICTION

We have jurisdiction to hear appeals from final orders. See 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 589 U.S. 35, 39 (2020). The Dismissal Order is a final order. St. Peter v. Hutchings (In re Hutchings), BAP No. MW 10-078, 2011 WL 4572017, at *2 (B.A.P. 1st Cir. May 25, 2011).[8] Additionally, the two interlocutory rulings which were properly preserved for appeal—the Joinder Deadline Order and the Order Denying Joinder Motion—have merged with the Dismissal Order and are now final and reviewable. Segarra Miranda v. Banco Popular de P.R. (In re Rivera Mercado), 599 B.R. 406, 416 (B.A.P. 1st Cir. 2019). We, therefore, have jurisdiction to hear this appeal.

## STANDARDS OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Jeffrey P. White & Assocs., P.C. v. Fessenden (In re Wheaton), 547 B.R. 490, 496 (B.A.P. 1st Cir. 2016) (citation omitted). We apply the de novo standard of review to the Dismissal Order. See Kristan v. Hanson (In re Univ. Millennium Park, LLC), No. 8:11-cv-696-T-17, 2011 WL 4634028, at *2-3 (M.D. Fla. Oct. 5, 2011) (reviewing the bankruptcy court's dismissal of the involuntary petition de novo); see also Isbell v. DM Records, Inc., 529 B.R. 793, 797 (S.D. Fla. 2015) (following University Millennium Park and adopting the de novo standard of review).

"The findings of a bankruptcy court which support dismissal of the bankruptcy case are factual determinations which are reviewed under the clearly erroneous standard." In re DSC, Ltd., 486 F.3d at 944 (citation omitted). Whether the bankruptcy court erred in entering the

---

[8] The pendency of the Appellees' request for reimbursement of fees and costs in the bankruptcy court does not alter our finality determination. See In re DSC Ltd., No. 05-72779, 2005 WL 2671314, at *3 (E.D. Mich. Oct. 19, 2005); see also Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202-03 (1988) (stating "a decision on the merits is a 'final decision' for purposes of [28 U.S.C.] § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case").

14

Order Denying Joinder Motion is a question of law we review de novo. See id. at 948. Although the Joinder Deadline Order also involves a question of law, in this instance, we review it only for plain error for the reasons discussed above. See United States v. Baldyga, 233 F.3d 674, 682 (1st Cir. 2000) ("Error is 'plain' if it is 'clear' or 'obvious.'") (citation omitted).

"Whether the bankruptcy court identified and applied the correct burden of proof is a question of law" reviewed de novo. NetJets Aviation, Inc. v. RS Air, LLC (In re RS Air, LLC), 638 B.R. 403, 408 (B.A.P. 9th Cir. 2022) (citation omitted); see also Mont. Dep't of Revenue v. Blixseth, 581 B.R. 882, 888 (D. Nev. 2017), aff'd in part, 942 F.3d 1179 (9th Cir. 2019).

## DISCUSSION

### I. The Standards Governing Involuntary Petitions, Generally

#### A. Who May File

Section 303 authorizes the filing of an involuntary petition against a corporation. The required number of petitioning creditors depends upon the number of eligible creditors holding qualified claims. 11 U.S.C. § 303(a); In re Reyes Colon, 474 B.R. 330, 362 (Bankr. D.P.R. 2012) (citing William L. Norton, Jr., 2 Norton Bankruptcy Law & Practice 3d § 22:2). If the debtor has 12 or more eligible creditors, at least three petitioning creditors are required to commence an involuntary bankruptcy. 11 U.S.C. § 303(b)(1). "To determine whether there are fewer than 12 creditors of the debtor, certain creditors are not counted." Hon. Joan N. Feeney (Ret.) & Michael J. Stepan, 3 Bankruptcy Law Manual § 14:9 (5th ed. 2024-1, June 2024 update). Among those "[e]xcluded from the computation are . . . any creditors who received transfers voidable by a trustee under . . . [§] 547 . . . ." Id. (footnotes omitted); see also 11 U.S.C. § 303(b)(2).

15

**B.     Who May Contest**

The Bankruptcy Code and the Bankruptcy Rules specifically permit an alleged debtor to contest an involuntary petition.  See 11 U.S.C. § 303(d); Fed. R. Bankr. P. 1011(a).  When the alleged debtor has not contested the petition, however, courts have permitted assignees to do so.  See, e.g., A & B Liquidating, Inc., 18 B.R. 922, 925 (Bankr. E.D. Va. 1982).  Where, as here, the alleged debtor joined the assignee's motion to dismiss, one bankruptcy court held that the assignee was "deemed" to have the debtor's standing.  In re Kenval Mktg. Corp., 38 B.R. 241, 242-43 (Bankr. E.D. Pa. 1984).  Thus, in the instant case, where HHT joined the Assignee's Motion to Dismiss, we adopt the Kenval view and conclude that the Assignee is deemed to have HHT's standing to contest the involuntary petition.  See id.

## II.     Joinder of Creditors

### A.     The § 303(c) Standard Authorizing Joinder

"Where there are fewer than the three required petitioning creditors, the Code and Rules allow for . . . joinder."  Hayden v. QDOS, Inc. (In re QDOS, Inc.), 607 B.R. 338, 343 (B.A.P. 9th Cir. 2019) (citing 11 U.S.C. § 303(c); Fed. R. Bankr. P. 1018).  Section 303(c) provides that "[a]fter the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor . . . may join in the petition with the same effect as if such joining creditor were a petitioning creditor . . . ."  11 U.S.C. § 303(c).  "Thus, joinder may remedy a defect in the number of petitioning creditors."  In re QDOS, Inc., 607 B.R. at 343.  "Creditors eligible to join are those that were not petitioning creditors under § 303(b) and who hold unsecured claims that are not contingent."  In re Utilimax.Com, Inc., 265 B.R. 63, 68 (Bankr. E.D. Pa. 2001); see also 11 U.S.C. § 303(c).

"If it appears that there are 12 or more creditors as provided in § 303(b) . . . , the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing

is held thereon." Fed. R. Bankr. P. 1003(b). "Both the 'reasonableness' of the opportunity to join required by [Bankruptcy] Rule 1003(b) in cases with one or two petitioners and the exercise of discretion over the opportunity to join in three-petitioner cases is measured in the context of" Bankruptcy Rule 1013(a). Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc)., 277 F.3d 1057, 1062, 1071 (9th Cir. 2002). The latter rule mandates that "[t]he court shall determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief . . . ." Fed. R. Bankr. P. 1013(a).

## B. Conflict in Legal Authority Regarding Limitations on the Right of Joinder

Courts are divided on the question of whether the right to join an involuntary petition under § 303(c) is unrestricted. In a pre-Code case, the First Circuit stated without explication: "Intervention is a matter of right unless the bankruptcy court finds the petition was made in bad faith for the purpose of improperly invoking its jurisdiction." In re Crown Sportswear, Inc., 575 F.2d 991, 993 (1st Cir. 1978). More recently, the Third Circuit likewise stated that § 303(c) "provides for joinder of creditors as a matter of right." In re Forever Green Athletic Fields, Inc., 804 F.3d 328, 337 (3d Cir. 2015) (citing In re FKF Madison Park Grp. Owner, LLC, 435 B.R. 906, 907-08 (Bankr. D. Del. 2010)). Several other courts have held similarly. See, e.g., IBM Credit Corp. v. Compuhouse Sys., Inc., 179 B.R. 474, 477 (W.D. Pa. 1995) ("Joinder is a matter of right . . . [.] The straightforward language of the statute permits any number of qualifying creditors to sign onto the petition . . . .") (citation and internal quotation marks omitted), aff'd, 85 F.3d 612 (3d Cir. 1996); In re Elsub Corp., 66 B.R. 172, 188 (Bankr. D.N.J. 1986) ("Under both the Bankruptcy Act and the Bankruptcy Code, intervention in an involuntary petition has been held to be a matter of right.") (citations omitted).

In characterizing intervention as "a matter of right," one court held that this means there are "no restrictions on joinder in [§] 303(c)" and, therefore, courts are not "authorized to

interpose conditions upon joinder by qualifying creditors." In re Kidwell, 158 B.R. at 210-11.

The Kidwell court reasoned that joinder is synonymous with intervention as of right:

> Federal Rule of Civil Procedure 24(a)(1) governs the procedure for joinder. The right to join in an involuntary petition is an unconditional right to intervene conferred by a statute of the United States within the meaning of Rule 24(a)(1). That rule is made applicable to involuntary petitions by the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 1018[9] and 7024.
>
> Although the practice is to file a motion to join as a petitioner, the motion is actually a motion to intervene as a petitioner. Fed. R. Civ. P. 24(c).

Id. at 212.

In contrast, the Sixth Circuit ruled that bankruptcy courts may set a deadline for creditors to join an involuntary petition, notwithstanding the provisions of § 303(c), stating:

> The statute does not prohibit a court from setting an earlier deadline, based upon its case management authority, in order to ensure orderly, fair, and efficient proceedings. This is especially true in the context of an involuntary bankruptcy proceeding, where the court is required to expedite such proceedings. Fed. R. Bankr. P. 1013(a).

In re DSC, Ltd., 486 F.3d at 948.

## III.    The Joinder Standards Applied

Within this legal framework, we must determine: (1) whether the bankruptcy court erred in establishing the May 23, 2022 joinder deadline; and (2) whether the bankruptcy court erred in refusing to permit DFT to join the involuntary petition after the expiration of that deadline.

---

9  Bankruptcy Rule 1018 provides, in relevant part:

Unless the court otherwise directs and except as otherwise prescribed in Part I of these rules, the following rules in Part VII apply to all proceedings contesting an involuntary petition . . . : Rules 7005, 7008-7010, 7015, 7016, 7024-7026, 7028-7037, 7052, 7054, 7056, and 7062. The court may direct that other rules in Part VII shall also apply. For the purposes of this rule a reference in the Part VII rules to adversary proceedings shall be read as a reference to proceedings contesting an involuntary petition . . . . Reference in the Federal Rules of Civil Procedure to the complaint shall be read as a reference to the petition.

Fed. R. Bankr. P. 1018.

18

Our analysis—informed by the considerations articulated in the above cases and by the overarching principle that a court is entitled to manage its own dockets—leads to the conclusion that the answer to both questions is "no."

### A.      The Bankruptcy Court Properly Established the Joinder Deadline

We agree with DSC's conclusion that § 303(c) does not prohibit courts from setting an earlier joinder deadline, because it is consistent with U.S. Supreme Court and First Circuit precedent instructing that "courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." Dietz v. Bouldin, 579 U.S. 40, 47 (2016) (citations omitted); see also Lepore v. United States (In re Petition for Order Directing Release of Records), 27 F.4th 84, 89 (1st Cir. 2022) (acknowledging "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") (citation and internal quotation marks omitted).  As the First Circuit has stated: "The Civil Rules endow trial judges with formidable case-management authority." Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998) (citing Fed. R. Civ. P. 16(b)(2), regarding scheduling orders).  "In exercising this power, [t]rial judges enjoy great latitude . . . ." Id. (citation and internal quotation marks omitted).  In addition, DSC's approach best harmonizes the tension between § 303(c) (permitting joinder "before the case is dismissed or relief is ordered") and Bankruptcy Rule 1013(a) (requiring the court to "determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief [or] dismiss the petition")—a goal which finds support in well-established rules of statutory construction.  See Shaw v. Aurgroup Fin. Credit Union, 552 F.3d 447, 457 (6th Cir. 2009) (acknowledging "the general maxim that the Bankruptcy Code and Rules [are to] be construed so that their provisions are harmonious with each other") (citation and internal quotation marks omitted); see also Wachovia Dealer Servs. v. Jones (In re Jones), 530 F.3d 1284,

19

1290 (10th Cir. 2008) (same).  Moreover, as discussed further below, nothing in Crown Sportswear or other cases characterizing joinder as a matter of right precludes a court from also exercising its important right to manage its docket.

Accordingly, we conclude that the bankruptcy court did not plainly err when it entered the Joinder Deadline Order.

**B.      The Bankruptcy Court Properly Denied the Untimely Joinder Motion**

Turning now to the Joinder Motion, we note that intervention motions have a timeliness requirement.  See 100Reporters LLC v. U.S. Dep't of Justice, 307 F.R.D. 269, 280 n.2 (D.D.C. 2014); see also Public Citizen v. Liggett Grp., Inc., 858 F.2d 775, 784 (1st Cir. 1988) ("Rule 24 requires that an application for intervention be 'timely'. . . .") (citations omitted).  Adopting the view that joinder motions are actually motions to intervene, see Kidwell, 158 B.R. at 212, it follows that they, too, have a timeliness requirement.  "[E]ven in the case of a motion to intervene as of right, the [trial] court's discretion [in applying the timeliness requirement] is appreciable . . . ." Photographic Illustrators Corp. v. Orgill, Inc., 316 F.R.D. 45, 48 (D. Mass. 2016) (citation and internal quotation marks omitted); see also Liggett Grp., Inc., 858 F.2d at 784 ("[T]imeliness determinations under Rule 24 are vested in the sound discretion of the [trial] court.") (citing NAACP v. New York, 413 U.S. 345, 366 (1973)).

There is "no bright line standard for determining what constitutes timeliness." Liggett Grp., Inc., 858 F.2d at 784.  Instead, timeliness "is to be determined from all the circumstances." NAACP v. New York, 413 U.S. at 366; see also R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009) ("The timeliness inquiry is inherently fact-sensitive and depends on the totality of the circumstances.") (citation omitted).  To determine whether a motion to intervene is timely, the First Circuit considers:

(i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention.

R & G Mortg. Corp., 584 F.3d at 7 (citation omitted).

Thus, joinder is indeed a matter of right insofar as determining *who* may join the involuntary petition is concerned; in this case, the relevant statute, § 303(c), extends the right of joinder to any creditor with an unsecured, noncontingent claim. See 11 U.S.C. § 303(c). But the *timing* of the exercise of that right is not as unfettered as the Appellants suggest. First Circuit case law imposes a timeliness requirement on motions to intervene as of right. Indeed, a timeliness requirement is embedded in the plain language of Rule 24(a).[10]

Here, DFT knew of the May 23, 2022 joinder deadline when it initially opted not to intervene and instead waited until approximately eight weeks after the expiration of that deadline to file its Joinder Motion. The record reflects that the bankruptcy court took this factor into consideration when it denied the Joinder Motion, although it did not explicitly reference R & G Mortgage Corp. or the factors listed in that decision as relevant to a timeliness inquiry. The record further reflects that, consistent with this circuit's guidance, the bankruptcy court considered other, "special circumstances" as well—namely, DFT's consent to the assignment for the benefit of creditors. See R & G Mortg. Corp., 584 F.3d at 7 (stating the timeliness inquiry should be informed by "special circumstances").

This latter factor, alone, may have been enough to support the bankruptcy court's decision. The First Circuit has long held that a "creditor who has assented in writing to the terms

---

[10] Rule 24(a), governing "Intervention of Right," provides in pertinent part: "On *timely* motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute[.]" Fed. R. Civ. P. 24(a)(1) (emphasis added).

of a common-law assignment for the benefit of creditors is not entitled ordinarily to join in an involuntary petition . . . ." Moulton v. Coburn (In re George M. Coburn & Co.), 131 F. 201, 203 (1st Cir. 1904); see also In re John Oliver Co., 24 B.R. 539, 541 (Bankr. D. Mass. 1982) (stating "a creditor who participates in an assignment is precluded from filing an involuntary" if the participation was "with knowledge of all facts concerning the creditor's rights").

In light of the foregoing, we discern no error in the denial of DFT's untimely joinder request. This decision (as well as the Joinder Deadline Order) was buttressed by the Bankruptcy Rules, which dictate that the bankruptcy court "*shall* determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order."[11] Fed. R. Bankr. P. 1013(a) (emphasis added).

## IV.     The Dismissal Order

Essentially, the Appellants raise three challenges to the Dismissal Order: (1) as a rule, bankruptcy courts should not consider affirmative defenses to avoidability in the context of a motion to dismiss an involuntary petition; (2) even if it were generally appropriate to consider such defenses, in this case, HHT's failure to plead them should have barred the bankruptcy court from considering them; and (3) in any event, the bankruptcy court erred by placing upon Rokita and Morimatsu the burden of proving that those defenses were unavailable to certain of the listed creditors. These assignments of error reflect a misunderstanding of the procedure for contesting an involuntary petition and, more particularly, the effect of shifting burdens in such contests.

---

[11] The amount of time that lapsed between trial and the entry of the Dismissal Order might suggest a pace inconsistent with the requirements of Bankruptcy Rule 1013(a). However, we have not been asked, nor are we required, to determine whether the bankruptcy court determined the issues presented by the involuntary petition at the "earliest practicable time" within the meaning of that rule. See In re Griffin, No. 23-32658, 2023 WL 6979047, at *3 (Bankr. S.D. Tex. Oct. 20, 2023) ("'Earliest practicable time' has been interpreted to mean as soon as 'there is sufficient information to resolve the conflict before the court.'") (citations omitted).

22

### A. The Initial Burden of an Alleged Debtor

An alleged debtor may raise the defense of a failure to comply with the three-petitioner requirement by filing either a motion to dismiss under Rule 12 or an answer to the involuntary petition. In re QDOS, Inc., 607 B.R. at 347. Bankruptcy Rule 1011 expressly allows the alleged debtor to file a Rule 12 motion to dismiss before answering the involuntary petition. Id. at 345 (citing Fed. R. Bankr. P. 1011(a)-(c)); see also In re Haymond, 633 B.R. 520, 530 (Bankr. S.D. Tex. 2021). Although "an involuntary debtor may initially contest the involuntary petition through a Rule 12(b)(6) motion," it "must answer and file the list of creditors required" by Bankruptcy Rule 1003(b) if "a trial is required for resolution." In re Haymond, 633 B.R. at 531 (citing In re QDOS, Inc., 607 B.R. at 345).

### B. The Burden of Petitioning Creditors

In this circuit, the burden of disputing the existence and eligibility of creditors to be counted towards the numerosity requirement unequivocally shifts to the petitioning creditors once the alleged debtor answers and files a list of creditors in compliance with Bankruptcy Rule 1003(b). See In re Reyes-Colon, 922 F.3d at 19-20. Other courts agree. See, e.g., Blixseth, 581 B.R. at 890 (stating the bankruptcy court "did not err when it placed the initial burden on [the alleged debtor] to show that he had at least 12 creditors on the petition date and, once met, shifted the burden to the petitioning creditors to show that those creditors were not qualified"). Thus, it is the petitioning creditors' burden to establish that any creditors should be excluded from the creditor count because they received avoidable transfers. See id. at 893.

**C.      The Bankruptcy Court Correctly Applied the Burdens of Proof and Appropriately Considered Defenses to Preference Claims**

The requirements of Bankruptcy Rule 1003(b) were satisfied when the Assignee filed the creditor list along with the Motion to Dismiss and answer.[12] See Fed. R. Bankr. P. 1003(b). It therefore follows from Reyes-Colon and Blixseth that, after HHT produced a list of 15 creditors in compliance with Bankruptcy Rule 1003(b), the bankruptcy court correctly shifted the burden of proof to Rokita and Morimatsu to demonstrate those creditors were not qualified. See Reyes-Colon, 922 F.3d at 19; Blixseth, 581 B.R. at 889.[13]

In shifting that burden to Rokita and Morimatsu, the bankruptcy court appropriately considered the availability of affirmative defenses to § 547 in determining whether to exclude a creditor under § 303(b)(2). Although case law on this issue is somewhat limited, it reflects that when deciding whether any of an alleged debtor's creditors should be excluded from the creditor count, courts consider not only whether those creditors received a voidable transfer under § 547 or § 549 but also whether there is a defense to avoidability. See, e.g., Williams v. Roos, 2021 WL 234498, at *3; In re Williams, 636 B.R. at 736; Blixseth, 581 B.R. at 891. As the district court stated in Williams v. Roos:

> Section 303(b)(2) excludes creditors who are transferees "of a transfer that is voidable" under section 547. Section 547(b) provides that a preferential transfer is avoidable "[e]xcept as provided in subsections (c) and (i) of this section." 11 U.S.C. § 547(b). In other words, a preferential transfer is not avoidable under section 547(b) and, hence, not subject to exclusion under section 303(b)(2), if one of the section 547(c) defenses applies to the transfer. Accordingly, by definition,

---

[12]  We note that the Appellants have not disputed the sufficiency of that list on appeal.

[13]  The Appellants neither argued that they established there were fewer than 12 creditors, nor challenged the bankruptcy court's findings on that essential issue. Therefore, we need not review the bankruptcy court's factual findings that supported its conclusion that HHT had more than 12 eligible creditors. The only issues raised are legal in nature.

24

section 547(c) defenses must be considered in determining whether to exclude a creditor under section 303(b)(2).

2021 WL 234498, at \*3. In reaching this conclusion, Williams v. Roos explicitly rejected Blaine Richards, 10 B.R. at 428, where a New York bankruptcy court ruled that defenses to avoidance under § 547(c) need not be considered in determining whether to exclude a creditor. See Williams v. Roos, 2021 WL 234498, at \*3.

A proper examination of § 303(b)(2) "must begin 'where all such inquiries must begin: with the language of the statute itself.'" Morse v. Rudler (In re Rudler), 576 F.3d 37, 44 (1st Cir. 2009) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989); Stornawaye Fin. Corp. v. Hill (In re Hill), 562 F.3d 29, 32 (1st Cir. 2009)). With this principle in mind, we conclude that the Williams v. Roos court aptly criticized the Blaine Richards opinion for "ignor[ing] the text of [§] 303(b)(2) and 547(b)." 2021 WL 234498, at \*3. Indeed, § 303(b)(2) unambiguously excludes creditors who are "transferee[s] of a transfer that is voidable under . . . [§] 547 . . . ." See 11 U.S.C. § 303(b)(2). "[I]t is a well-settled rule of statutory construction that the plain language of a statute offers the primary guidance to its meaning." Más de León v. Banco Popular de P.R., 312 F. Supp. 3d 279, 284 (D.P.R. 2018) (citation and internal quotation marks omitted). "[W]here, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." Ron Pair Enters., Inc., 489 U.S. at 241 (citation and internal quotation marks omitted).

Given the preeminence of the plain language rule in matters involving statutory interpretation, we are persuaded by the Williams v. Roos court's reading of § 303(b)(2). Thus, in considering whether creditors should be excluded under § 547 as recipients of a preferential transfer, it follows that the bankruptcy court properly—indeed necessarily—extended its

25

consideration to the existence of defenses under subsection (c) of that statute.  See In re

Williams, 636 B.R. at 725; Blixseth, 581 B.R. at 891-93.  In so doing, the bankruptcy court also

correctly placed on Rokita and Morimatsu the burden of establishing the unavailability of

§ 547(c) affirmative defenses to claims of preferential transfers.  See Blixseth, 581 B.R. at 893.[14]

This task naturally falls within the scope of "disput[ing] the existence or eligibility" of the

creditors listed—a duty unquestionably imposed upon the petitioning creditors in Reyes-Colon,

as stated above.  See 922 F.3d at 20-21.  Thus, the bankruptcy court did not err when it ruled that

Rokita and Morimatsu could not "shift that burden back" by requiring the Assignee and HHT "to

plead and prove potential defenses to alleged [preferential] transfers."

If, however, the bankruptcy court erred in articulating the burden of proof in this manner,

that error was harmless.  See Harutyunyan v. Gonzales, 421 F.3d 64, 70 (1st Cir. 2005)

(explaining, in an immigration case, a harmless error is one that would not "have made a

dispositive difference in the outcome of the proceeding"); see also Compton v. Comm'r of Soc.

Sec., No. 1:20-cv-00191-RJC, 2022 WL 678474, at *3 (W.D.N.C. Mar. 7, 2022) ("A harmless

error is one that would not have led to a different result.") (citations omitted).  This is because a

close reading of the bankruptcy court's decision reveals that despite ruling Rokita and

Morimatsu could not shift the burden of proving affirmative defenses back to the Appellees, in

effect, that is precisely what the bankruptcy court did: in four out of five instances involving a

potential voidable transfer that would render a listed creditor ineligible to be counted, the

bankruptcy court actually placed the burden of proving the existence of potential § 547 defenses

on the Assignee and HHT.

---

[14]  But see In re Williams, 636 B.R. at 725 (placing the burden on the alleged debtor to prove her ordinary course defense).

For example, with respect to creditors Comcast, National Grid, and Bank of America, the bankruptcy court found implicitly that the Assignee and/or HHT produced sufficient evidence to establish ordinary course or new value defenses.  See In re HH Tech. Corp., 649 B.R. at 375-77.  As for Ambit Energy, the bankruptcy court found, explicitly, that the Appellants showed the payment to that creditor was not voidable based on an ordinary course defense.  Id. at 377.  And, in the fifth instance, concerning Voizzo VoIP, the court concluded that Rokita and Morimatsu simply failed to establish the elements of its preference claim, so it did not reach the issue of whether there was a defense to the claim.  Id. at 376.

### D.      Whether § 547(c) Affirmative Defenses Should be Pleaded

The only remaining question is whether the failure of the Assignee and HHT to plead the affirmative defenses to § 547 voidability claims should have barred the bankruptcy court from considering those defenses altogether.  Rule 8(c), made applicable to adversary proceedings by Bankruptcy Rule 7008, requires "a party" to "affirmatively state any avoidance or affirmative defense" in "responding to a pleading."  See Fed. R. Civ. P. 8(c); Fed. R. Bankr. P. 7008.  The § 547(c) exceptions to avoidable preferential transfers (including "contemporaneous exchange for new value" and "ordinary course of business") are affirmative defenses that are waived if not affirmatively pleaded in a defendant's answer.  Kipperman v. Onex Corp., 411 B.R. 805, 865 (N.D. Ga. 2009) (citations omitted); see also 11 U.S.C. § 547(g) (placing the burden to prove § 547(c) defenses on defendant).

The Appellees argue in their appellate brief that, "[b]ecause this is a contested matter, the General Rules of Pleading under Bankruptcy Rule 7008, including the requirement that a party must assert affirmative defenses under subsection (c) thereof, do not apply."  This argument misses the mark.  Bankruptcy Rule 7008 is among the Part VII Rules that apply to all proceedings contesting an involuntary petition.  See Fed. R. Bankr. P. 1018 (stating "the

27

following rules in Part VII apply to all proceedings contesting an involuntary petition . . . : Rules . . . 7008-7010"). And at least one court has stated that Bankruptcy Rule 1018 "treats contested involuntary petitions as adversary proceedings," not contested matters. QDOS, Inc., 607 B.R. at 347; see also In re Blair House Assocs. Ltd. P'ship, No. 21-20110, 2022 WL 1295919, at *1 (Bankr. D. Me. Apr. 29, 2022) ("Bankruptcy Rule 1018 establishes the initial universe of adversary proceeding rules of Part VII of the Federal Rules of Bankruptcy Procedure[] that govern the proceedings contesting an involuntary petition.").

Nevertheless, we agree with the Appellees' assertion that the bankruptcy court properly considered their unpleaded affirmative defenses to the Appellants' § 547 preference claims for several related reasons. The Appellees were not "creditor[s] or part[ies] in interest against whom recovery or avoidance [was] sought" within the meaning of § 547(g). The underlying proceeding was not a preference action, but rather a contested involuntary petition, and the Appellants, themselves, never formally pleaded their preference claims, but instead merely disclosed that there were potential avoidance issues at a pretrial status conference on April 21, 2022. To be sure, the scope of pleadings authorized by Bankruptcy Rule 1011 is limited. See Fed. R. Bankr. P. 1011(e) ("No other pleadings shall be permitted, except that the court may order a reply to an answer . . . ."). Ideally, in this instance, after the Appellants alluded to such issues, the bankruptcy court would have ordered a reply under Bankruptcy Rule 1011(e). In the absence of such an order, however, nothing precluded the Appellants from seeking leave to file a reply, specifically framing the issues under § 547—indeed, the very issues they would ultimately be required to prove at trial. See Reyes-Colon, 922 F.3d at 19.

Moreover, to the extent the Appellees had objections or defenses to the involuntary petition, under Bankruptcy Rule 1011(b), they satisfied the requirement to present them in the manner prescribed by Rule 12. Sphere Acquisition, LLC v. Bella Hospitality Grp., LLC (In re

Bella Hospitality Grp., LLC), 649 B.R. 200, 203 (B.A.P. 9th Cir. 2023) (citing Fed. R. Bankr. P. 1011(b) (providing "[d]efenses and objections to the petition shall be presented in a manner prescribed by" Rule 12).  They did so by asserting in their Motion to Dismiss and in their answer (as an affirmative defense) that there were more than 11 creditors with qualifying claims against HHT and the involuntary petition was, therefore, not joined by the requisite number of creditors under § 303(b)(1).

Even assuming for the purposes of argument that the Appellants correctly assert that alleged debtors must plead § 547(c) defenses, this argument overlooks that the rule requiring affirmative defenses to be specifically pleaded has exceptions.  See Cox v. Kone Emps. Credit Union (In re Riley), 297 B.R. 122, 126 (Bankr. E.D. Ark. 2003) (collecting cases).  "[C]ourts view 'waiver of a defense [as] a harsh sanction [which] is not automatically applied merely because an affirmative defense is not included in the answer.'"  Allen Petroleum Creditors' Tr. v. Patel (In re Allen Petroleum Co.)., No. CIV.A. 97-06382-W, 2000 WL 33710882, at *2 (Bankr. D.S.C. Aug. 17, 2000) (quoting Floyd v. Ohio Gen. Ins. Co., 701 F. Supp. 1177, 1187 (D.S.C. 1988)).  "There is ample authority among various jurisdictions that, absent unfair surprise or prejudice to a plaintiff, an affirmative defense is not waived for failure to raise it in the original answer."  Id. (citing Floyd, 701 F. Supp. at 1187; Brinkley v. Harbour Recreation Club, 180 F.3d 598, 612 (4th Cir. 1999)).

Here, the record reflects that the failure to plead the affirmative defenses to the § 547 claims cannot be attributed solely to the Appellees.  The Appellants were late in raising the § 547 claims in the first instance.  Therefore, to the extent there was any surprise or prejudice resulting from the assertion at trial of affirmative defenses to Rokita and Morimatsu's § 547 claims, it cannot be characterized as unfair, as they, themselves, never formally pleaded the preference

claims in the first instance and by this omission contributed to the delayed assertion of the affirmative defenses.

## <u>CONCLUSION</u>

For the reasons set forth above, the orders of the bankruptcy court properly preserved for this appeal—the Joinder Deadline Order, the Order Denying Joinder Motion, and the Dismissal Order—are **AFFIRMED**.